JEAN B. LA FORTUNE *vs.* JAMES JOLLY & another.

Hampden.    September 23, 1896. — November 24, 1896.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Assumption of Risk — Setting Servant at Work in Dangerous Place without Instruction — Evidence.*

If a person who has not done the work before is ordered by his superior to build a fire under a boiler for the purpose of furnishing power in a factory, and, after objecting on the ground that he is afraid to do it, proceeds to make the fire and is injured by reason of the door of the fire box in the furnace blowing open, this is not an obvious risk which he will be held to have assumed in an action against his employer for his injury.

If it is the duty of workmen in a factory to do what A. tells them, and A. directs a workman, who does not know the danger from the door of the fire box blowing open, to build a fire under a boiler for the purpose of furnishing power, and fails to give him proper instructions, A. represents for this purpose the master, who is liable for his neglect.

Although a furnace or boiler in a factory may not be defective or dangerous when a fire is properly made therein, yet if there is danger when a fire is made in the furnace by an inexperienced employee, who is ordered to make it, and this danger is known to the employer and not to the employee, and no instructions are given to the latter, it may properly be said that he is set at work in a dangerous place.

In an action for personal injuries received by the plaintiff while starting a fire in a furnace in a factory under orders from A., who is shown to have had general authority to call on the plaintiff to make such a fire, evidence that, on this occasion, the master had instructed A. to make the fire himself is properly excluded.

TORT, against James Jolly and William Jolly, copartners as J. and W. Jolly, for personal injuries sustained by the plaintiff while in the employ of the defendants. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and the defendants alleged exceptions, which appear in the opinion.

*W. H. Brooks*, ( *W. Hamilton* with him,) for the defendants.

*M. F. Druce*, for the plaintiff.

LATHROP, J.   Under the ruling of the court, the only questions which are now before us arise under the first and third counts of the declaration, which are at common law.   The first count alleges negligence on the part of the defendants in failing to instruct the plaintiff in his duties and to warn him as to the dangers thereof.   The third count alleges that the defendants negligently failed to furnish the plaintiff with a reasonably safe and suitable place in which to work.

The plaintiff was a chipper and helper in the defendants' factory, and his general duty was to chip and file off the rough edges of castings, and to assist the other men when called upon to do so.   On June 8, 1895, the plaintiff was told by John Jolly, a son of one of the defendants, to kindle a fire under one of the boilers on the morning of the next day, which was a Sunday.   He objected, on the ground that he was afraid to do it, as he had never done it before.   Jolly, however, insisted upon the plaintiff's obeying him, and the next morning the plaintiff put shavings in the furnace, lighted them, continued to stuff in more shavings, and, more than an hour after the fire was started, there was an explosion inside, the door of the fire box flew open, and the plaintiff was seriously burned. There was evidence to show that the cause of the explosion was that too many shavings were put in at once, thereby stopping the draft, and preventing the gas formed by the combustion from passing off by the chimney.

The defendants contend that it was not within the scope of the plaintiff's duties to light the fire under the boiler; but there was certainly evidence for the jury on this point.   James Jolly, one of the defendants, testified that "it was the helpers' business to do what John Jolly told them"; and that "it was a part of the helpers' business to light this fire."   While it appears in evidence that the plaintiff was reluctant to build the fire, because, as he said, he had never done so before, and was afraid of danger from an explosion or from being burnt, yet it does not appear that he knew anything about any risk from the door of the fire box blowing open.   On the contrary, he testified that he never saw the door blow open before, although he had worked there for two years and two months. The risk was not an obvious one, nor can it be said, as matter

of law, that, if he did not know it, he ought to have known it. The furnace and boiler were not used on week days to furnish power. The furnace was then used to burn the waste shavings. On Sundays the furnace and boiler were used for power. The plaintiff testified that he had been there on Sundays only twice before. The plaintiff had never before been called upon to make the fire and get up steam, this work being generally done by one Kelley, who was ill at the time of the accident. We are of opinion that, under these circumstances, it cannot be said that, as matter of law, the plaintiff took the risk. One of the defendants, at least, knew that the door of the fire box had blown open several times before the accident, and the danger was obvious if the door should blow open. While this defendant testified that he spoke on Saturday to his son John to start up the fire, and that he gave no instruction to his son with reference to the plaintiff's starting the fire, yet, as he also testified that it was the helpers' duty to do what John told them, we are of opinion that, if John directed a helper who did not know the danger to build the fire, and failed to give him proper instructions, he represented for this purpose the defendants, and they are liable for his neglect. *Bjbjian* v. *Woonsocket Rubber Co.* 164 Mass. 214, 220.

On the third count, the defendants asked the court to instruct the jury as follows: " There is no sufficient evidence that the defendants negligently failed to furnish the plaintiff with a reasonably safe and suitable place in which to work, and there can be no recovery on that ground." We are of opinion that this request was rightly refused. If we assume in favor of the defendants that there was no evidence that the furnace or boiler was defective or dangerous when a fire was properly made therein, yet if there was danger when a fire was made in the furnace by an inexperienced employee, who was ordered to make it, and this danger was known to the employer and not to the employee, and no instructions were given to the employee, it may properly be said that he is set to work in a dangerous place. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. There was evidence for the jury upon all of these points.

The defendants offered to show that James Jolly gave instruc-

tions to his son John to start up the fire himself. Evidence of this was excluded, and the defendants excepted. We have already recited the testimony of James Jolly as to the authority of John to call upon the helpers to make the fire. If John had this general authority, evidence that this authority was secretly withdrawn on the particular occasion in controversy was incompetent, and was properly excluded.

*Exceptions overruled.*