## BLACKMAN *v.* THOMSON-HOUSTON ELECTRIC COMPANY OF AUGUSTA.

1. One who is employed in the capacity of engineer for an incorporated manufacturing company, but who is likewise under a duty to obey generally the orders of a person who is placed in authority over him, and who has power temporarily to withdraw him from the performance of the special duty for which he was employed, and to assign him to the performance of other and inconsistent duties not connected with or embraced within his special employment, is not a fellow-servant with such superior; and if, while engaged in the performance of such duties which have been so assigned to him by his superior, he be injured, he can not be regarded as a mere volunteer.

2. While the person occupying the inferior position is, in a broad and general sense, a coemployee, he is not a fellow-servant with the person in authority over him, in the sense that he could not recover for injuries sustained by him in consequence of the negligence of such person.

3. If, in the prosecution of the business of the corporation, the agent having a general control of its working plant causes a scaffold to be constructed by other employees under his direction, for the purpose of removing heavy machinery, and after its completion temporarily withdraws the engineer from the performance of the special duties for which he was employed, and directs him to assist in the removal of such machinery, using for that purpose the scaffold so constructed, and because of some imperfection therein, resulting from a defect in the plan of its construction, such defect being unknown to the engineer, such scaffold falls and in consequence injures the engineer, he is entitled to recover.

4. Where the person in authority representing the master undertakes to plan such a contrivance, and to superintend its construction by ordinary unskilled laborers, such person thinks for the master, and the servant who uses it does not take the risk of defects of design, and the master will not be excused if, in consequence of such defects only, the servant is injured; but if the master deliver to such laborers material well suited to that purpose, leaving it to their discretion to devise the plan of so simple a contrivance as they proceed with the work, no recovery could be had by one who, as a fellow-servant with such laborers, subsequently undertakes to use such contrivance, and, because of defects therein, is injured; and this is true whether the defects be of plan or construction. In either case the injury would be imputable to the negligence of the fellow-servant.

5. Under the principles above announced, the court erred in directing a nonsuit.

Argued June 14, — Decided July 27, 1897.

Action for damages. Before Judge Eve. City court of Richmond county. November term, 1896.

*H. C. Hammond* and *Hamilton Phinizy*, for plaintiff.

*J. R. Lamar*, for defendant.

ATKINSON, J.  Blackman, an employee of the Thomson-Houston Electric Company of Augusta, was hurt by the falling of a scaffold upon him while he was attempting, together with other employees of the company, to move an iron wheel from a wagon into the power-house of the company by means of a block and tackle attached to the scaffolding; and he sued the company for damages, alleging that the falling of the scaffold was due to the negligence of the defendant in not having it properly supported or braced, and that the defendant was negligent in not giving him notice or warning of its unsafe or insecure condition.  On the trial of the case, at the conclusion of plaintiff's evidence, the court granted a nonsuit, and to this he excepted.

The following appeared from the evidence: The scaffold was built according to the directions and under the personal supervision of one Conners, who was defendant's general foreman at the power-house, for the purpose of moving the wheel, which weighed over 5,000 pounds.  The scaffold was constructed thus: An upright post, about 10 or 12 feet high and about 10 or 12 inches "in size," was placed opposite a window of the second story of the defendant's building, so that a wagon could pass between it and the building, and on this post, and extending from it northward through the window and into the building, were a piece of timber and three planks, the north end of which rested on a pile of blocks to keep the timber from lying on the window-sill, the blocks being higher than the sill and resting on the floor of the building.  The scaffold was braced east, west and south, but not on the north side or inside of the building.  To the timbers extending from the post into the window a block and tackle were attached.  The wheel was to be carried through a door directly under the window.  On the occasion in question the wagon from which the wheel was to be moved was driven directly under the scaffold and in front of this door. The wheel was hoisted from the wagon by means of the block and tackle, the wagon was driven from under, and the wheel was lowered nearly to the ground and shoved towards the sill of the door.  It had to be shoved a distance of two feet; and

it was while this was being done that the scaffold gave way and fell. The failure to brace the scaffold on the fourth side rendered it unsafe, though from the place where plaintiff was at the time of the moving it appeared to be safe. He did not examine it, and he thought it was safe. The fall of the scaffold was a result of the pushing of the wheel, which was done under order of Conners, and which was an improper thing to do in the absence of a support to the scaffold at the end which was not braced. With the same scaffold on a previous occasion the wheel had been safely taken out of the building. If the scaffold had been safe, the wheel could, without trouble, have been moved to the place in which they were trying to move it. The plaintiff had been in the employment of the defendant about four days before the occurrence in question. He was an engineer, and had been employed to run the engine at the defendant's power-house, and to do other work required of him, and whatever Conners told him to do. At the time of the moving of the wheel, Conners was at the wheel and did not have help enough to move it, and he ordered the plaintiff to assist in the moving. Brydges, the defendant's superintendent, heard the order given, and made no objection. Brydges was "up in the building" while the wheel was being moved, but knew it was being moved. Conners had the right to direct the help at the power-house, and to employ and discharge the hands; and he hired plaintiff. Conners's duties were to look after the machinery and to see that all of the hands were in their proper places, and work of the character of the moving of the wheel was usually entrusted to him. It was the practice and custom of the company for everybody to help whenever there was any moving to be done. There were eight or ten men helping to move the wheel, some of them being specially employed for the purpose. Conners assisted in taking the wheel out of the wagon, and held the chain of the block and tackle that let the wheel down, and when it nearly reached the ground gave the order to shove it over. The plaintiff was about the center of the wheel, facing the door, trying to shove it to the door, and was directly under the top piece of the scaffold, when the scaffold fell upon him.

Evidence was introduced as to the extent and nature of his injuries, and the pecuniary damage sustained.

1. Three propositions were urged upon us in support of the grant of a nonsuit in this case. One was, that the plaintiff, relatively to the work in which he was engaged at the time he was injured, was a mere volunteer, and that the master therefore owed to him no duty of diligence for a breach of which he could recover for injuries sustained in consequence of the negligent failure of the master to provide safe appliances and instrumentalities with which to do the work he undertook to perform. The second was, that if he were injured, the injury resulted from the negligence of a fellow-servant; and therefore he was not entitled to recover. The third was, that there was no such evidence of negligence upon the part of the master as would authorize a recovery by the plaintiff.

We are first to inquire whether the plaintiff was a volunteer in the sense that the duty he undertook to perform was so dissociated from the duty he was engaged to perform as to relieve the master from liability for the consequences of his negligence. According to the evidence in the record, the plaintiff was specially employed in the capacity of engineer; the special duties resulting from this employment being such as related to the running of the engines of the defendant company in its plant, which was employed in the generation of power by means of electricity, but in addition to the special duties assigned to him in consequence of this peculiar employment, he was required to perform such other and further duties as Conners, the general foreman of the plant, might see proper to assign to him. For the purpose of assisting in the removal of the machinery, in the handling of which he was injured, he was temporarily withdrawn from his special duties as engineer, by Conners, the person in authority over him. Conners, according to the evidence, had the power to command, and under his contract of employment it was the duty of the plaintiff to obey. It follows then that the service he undertook, in pursuance of the direction of Conners, was directly in the line of his duty under his contract of employment, and therefore he can not stand as one who has voluntarily abandoned the performance of the special duty for

which he was employed, and of his own free will engaged in the performance of other and inconsistent duties not within the contemplation of the parties at the time the contract of employment was made. Nor was he engaged in the undertaking which resulted in his injury upon the solicitation of a mere fellow-servant. As we have seen, he engaged in this particular enterprise under the direct command of the person whom the master had placed in authority over him; that person who spoke for the common master; that person through whose agency the will of the master operated upon subordinate employees; that person who stood as the alter ego of the company; and therefore, being engaged in the line of the performance of his duties under the direction of one who had authority to command obedience to his order, he can not be held to have been a mere volunteer, and, in the performance of the duties thus assigned to him, the master owed to him the same measure of diligence as it owed to all other persons employed by it who were engaged in the common occupation with the plaintiff at the time he was injured.

2. Was the plaintiff, according to this record, injured in consequence of the negligence of a fellow-servant, within the meaning of that term as it is employed in the rule which exempts the master from liability for injuries resulting from the negligence of a fellow-servant? While in a broad and general sense, colloquially speaking, all servants of a corporation, without reference to dignity, grade or distinction, are coemployees, they are not necessarily fellow-servants within the meaning of the rule above stated. As was well said by Chief Justice Jackson, in the case of *Atlanta Cotton Factory Company* v. *Speer*, 69 *Ga.* 137, "A corporation acts only through its agents, and unless responsible for their acts, is wholly irresponsible. The agent who represents the corporation as master over other employees for the time is in the shoes of the corporation, and whether they fit him, and he wears them with propriety or not, is their concern, for the reason that the corporation employs him, and puts others under him as a skilled and prudent manager. It is negligent if it fail to employ such a one, because those others under him must be subject to his

orders and obey his directions, or the great purpose and end of their creation, to wit organized and systematic labor and its fruits, are at an end. If, from the negligence of this quasi-master, this locum tenens, unmixed with negligence of his own, another servant or employee of the corporation is hurt, it must logically follow that the corporation is responsible, or it can be held responsible for no carelessness at all. From the president and general superintendent down to the smallest child who labors day or night, all the servants of this creature of the law, this impersonal entity, are coemployees, differing only in the character of their work and the amount paid them for it. If no coemployee can recover for the negligence of another, it must follow that no servant of a corporation can recover from it, no matter what it does; for it does nothing except by an employee. It would be thus to except corporations from the rule that a master is responsible to his employee for torts and careless and reckless disregard of life and limb. It would be to endow the artificial person with powers which no natural person can possess, and to grant that artificial creature immunities which no one of its creators can enjoy himself. It can not be good law." (Pages 148–149.)

The principle here announced was recognized and applied in the case of *Cheeney* v. *Ocean Steamship Company*, 92 *Ga.* 726, in a well-considered opinion of the present Chief Justice. In that case this court said: "If Hoffman had authority to employ such men as were necessary to effect the work with reasonable and ordinary safety, or authority to direct that one of the employees should attend the hatch, he was, as to the duty of supplying a "hatch-tender," the alter ego of the company, and was not a fellow-servant of the other employees in such sense as to cast upon them the risk of his failure to discharge that duty." So that, whatever rules may elsewhere prevail, in this State coemployment is not, and can not be, the test of fellow-service. As we have before seen, Conners, the foreman of the plant, was invested by the master with the authority to assign the plaintiff to the duties which he undertook to perform, and, acting under the direction of such a person, the only one who had authority to speak for the cor-

poration, he will be held to have acted under the direction of the master, the corporation itself.

3, 4, 5. We now come to consider the last question made in this case. Was there such evidence as would have authorized the submission to the jury of the question as to whether the master was negligent? The extreme simplicity in the plan of the construction of the contrivance, the defective condition of which is alleged to have caused the injury, takes it without the definition of machinery; and therefore, we are not to consider whether the master properly discharged his duty in supplying proper machinery to be used by his servants. The question is, was the appliance defective, and if so, did the defect result from the negligence of the master operating through the agency of its general foreman, or did it result from the negligence of the fellow-servants of the plaintiff? If the former, the master would be liable; if the latter, it would not. If the master undertake to provide for the servant a suitable appliance to be used by him in the performance of a particular work, superintending and directing himself the plan and manner of its construction, and in consequence of his negligence the appliance be so imperfectly planned or constructed as that in its proper use the servant is injured, the master would be liable. If in its use the servant be acting under the immediate direction of the master, and thus put the appliance to a use for which it was not designed, the servant himself being ignorant that such improper use would likely result in his injury, the master would still be liable. The same is true as to a person to whom the master has delegated the authority to represent him in respect of that particular matter. Where such a person undertakes to plan such a contrivance or appliance, and to superintend its construction by ordinary unskilled laborers, such person thinks for the master; and the servant who, in obedience to his command, uses it in the manner pointed out by such a representative of the master, does not assume the risks incident to defects of design, and the master will not be excused if, in consequence of such defects only, the servant be injured, unless such defects be of such a character as to render the appliance manifestly and obviously

dangerous. Whether or not the master, through Conners and under his direct superintendence, undertook to contrive and construct the appliance in question, is a question of fact. Whether or not there was a defect, either of design or construction, in this appliance, is also a question of fact. Whether the servant, knowing of the defect, nevertheless used it, whether such use was in a proper manner, and, if improper, whether under direction of the representative of the master and in ignorance upon the part of the plaintiff, are all questions of fact for the consideration of the jury. If a jury from the evidence should believe that Conners, intending to accomplish the removal of the machinery in question, furnished proper materials to those who were in fact fellow-servants of the plaintiff, and instructed them to construct this contrivance, without undertaking to give direction as to the plan of its construction, and the materials furnished for that purpose were reasonably suited to the end sought to be attained, leaving it to the discretion of such servants to select, not only the plan, but the manner of its construction, and in consequence of a defect either in the design or method of construction the plaintiff was injured, such injuries would be imputable to the negligence of a fellow-servant, and not to the negligence of the master. There are some appliances so simple in their nature as even the most unskilled workmen may be safely entrusted with their erection and use. Two pieces of timber used as a fulcrum and lever, in a broad sense, constitute an appliance. Their use involves the application of scientific principles of a high order; and yet these principles are so simple and so well understood that the negligence of a fellow-servant in placing these two pieces of timber in position for use by other fellow-servants could not be imputable to the master. The question whether the appliance now under consideration was one of this simple character, which could be by the master safely entrusted to the discretion of ordinary unskilled laborers, is also one of fact for the jury.

These considerations lead us to the conclusion that in granting a nonsuit, under the facts of the present case, the court committed error.

*Judgment reversed. All the Justices concurring.*