ANNIS H. NEVES, Respondent, v. THOMAS GREEN, Appellant.

Kansas City Court of Appeals, April 3, 1905.

1. **MASTER AND SERVANT: Insufficient Scaffold: Evidence: Verdict.** Evidence reviewed and held sufficient to send to the jury the question of whether a scaffold was sufficiently braced, and their verdict of insufficient bracing is held not to rest on mere conjecture.

2. ———: ———: **Pleading.** *Held*, that the gravamen of plaintiff's petition is not the partial driving of the nails holding a brace.

3. ———: ———: **Vice-Principal: Dual Capacity.** It is the vice-principal's business to furnish the servant a safe scaffold or place of work, and the fact that he constructed the scaffold will not make him a fellow-servant with one who is injured by the insufficiency of the scaffold, though, if in the act of making it he had negligently injured such an one, the relation would have existed.

4. ———: ———: **Damages: Verdict.** A verdict of three thousand dollars is held reasonable and not excessive.

Appeal from Jackson Circuit Court.—*Hon. Wm. B. Teasdale,* Judge.

AFFIRMED.

*Lathrop, Marrow, Fox & Moore* for appellant.

(1) There is no evidence in the record that the accident happened by reason of the negligent act of defendant, nor is there any evidence from which the negligent act charged in the petition can be fairly inferred as the cause of the accident. The verdict rests upon mere conjecture, and for that reason the judgment cannot be sus-

tained. Smith v. Railroad, 37 Mo. 292; Breen v. Cooper-age Co., 50 Mo. App. 202; Searles v. Railroad, 101 N. Y. 661; Brown v. Hershey L. & L. Co., 65 Mo. App. 162; O'Donnell v. Baum, 38 Mo. App. 245; Schnieder v. Railway, 75 Mo. 295; Waldhier v. Railroad, 71 Mo. 514; Fuchs v. St. Louis, 133 Mo. l. c. 197; Spiro v. Transit Co., 102 Mo. App. l. c. 261; Warner v. Railway, 178 Mo. 125 (and cases there cited); Zentz v. Chappell, 103 Mo. App. 208; Kelly v. Railway, 105 Mo. App. 365; Fuchs v. St. Louis, 167 Mo. 620; Glasscock v. Swofford D. G. Co., 80 S. W. 364; Epperson v. Tel. Co., 155 Mo. l. c. 382, 383; Oglesby v. Railway, 177 Mo. 272; O'Malley v. Railway, 113 Mo. 319. (2) Conceding the full truth of all the facts upon which plaintiff relies, as tending to prove that William Harrington was a vice-principal, yet under the law the said Harrington was a fellow-servant with plaintiff in respect to the work done by Harrington in constructing the scaffold or platform. Therefore for the negligence of said Harrington (if he was negligent) the plaintiff cannot recover. Thompson, Com. Neg. (2 Ed.), sec 3760; Bowen v. Railway, 95 Mo. l. c. 277; Jones v. Packet Co., 43 Mo. App. l. c., 407; Burns v. Washburn, 150 Mass. 457; O'Connor v. Rich, 164 Mass. 560; Benn v. Null, 65 Ia. 407; Marsh v. Herman, 47 Minn. 537; Oelschagel v. Railway, 73 Minn. 327; Mauger v. Bering (Tex.), 4 Am. Neg. Rep. 463; Lockwood v. Tennant, 100 N. W. (Mich.) 562; Fogarty v. Transfer Co., 180 Mo. 490 (and cases there cited); Lee v. Bridge Co., 62 Mo. 565; Garlin v. Railway 85 Mo. App. 579; Card v. Eddy, 129 Mo. 510; Sheehan v. Prosser, 55 Mo. App. 569; Ryan v. McCully, 123 Mo. 636; Hawk v. Lumber Co., 166 Mo. 121. (3) The plaintiff assumed the risk involved in working upon the scaffold constructed in the manner shown. Berning v. Medart, 56 Mo. App. 443; Glasscock v. Swafford Bros., 80 S. W. 364; Mathias v. Stock Yards, 84 S. W. (Mo.) 66; Epperson v. Tel. Co., 155 Mo. l. c. 381. (5) The verdict was excessive.

*Frank P. Walsh, E. R. Morrison* for respondent.

(1)    There was ample evidence to support the charge of negligence in the petition.   Anderson v. Railway, 161 Mo. 431; Bowen v. Railway, 95 Mo. 276; Donahoe v. K. C., 136 Mo. 671; Rodney v. Railway, 127 Mo. 689; Sullivan v. Railway, 108 Mo. 77 l. c.; Herdler v. Stove & Range Co., 136 Mo. 17; Doyle v. Trust Co., 140 Mo. 1; Hester v. Packing Co., 84 Mo. App. 451; Boettger v. Iron Co., 124 Mo. 87; Whalen v. Church, 62 Mo. 328 l. c.; sec. 6447, R. S. Mo. 1899.   (2)   William Harrington was a foreman and as such was the representative and vice-principal of defendant charged with the duty of seeing that the scaffolding was reasonably safe.   Dowling v. Allen, 74 Mo. 13; Steube v. Iron & Foundry Co., 85 Mo. App. 645 l. c.; Fox v. Packing Co., 96 Mo. App. 183; Shroeder v. Railway, 108 Mo. 329 l. c.; Hall v. Water Co., 48 Mo. App. 364; Foster v. Railway, 115 Mo. 180; Hutson v. Railroad, 50 Mo. App. 305; Hunt v. Lead Co., 104 Mo. App. 377; Blomquist v. C. M. & At. P. Railway, 60 Minn. 428.   (3)   By participating in the work William Harrington did not lose his character as vice-principal of defendant.   Russ v. Railway, 112 Mo. 52 Bowen v. Railway, 95 Mo. 277 l. c.; Fogarty v. Transit Co., 180 Mo. 490; Bien v. Transit Co., 83 S. W. 986; Donnelly v. Mining Co., 103 Mo. App. 349; Hutson v. Railway, 50 Mo. App. 303; Haworth v. Railway, 94 Mo. App. 224; Strode v. Konkey, 105 Mo. App. 15; Dayharsh v. Railway, 103 Mo. 570; Hughlett v. Lumber Co., 53 Mo. App. 93.   (4)   Plaintiff did not assume the risk of being injured in the manner alleged.   Wendler v. House F. Co., 165 Mo. 536; Pauck v. Beef Prov. Co., 159 Mo. 467; Hamilton v. Mining Co., 108 Mo. 364; Settle v. Railroad, 127 Mo. 343; Huhn v. Railroad, 92 Mo. 440; Scott v. Springfield, 81 Mo. App. 321; Smith v. Coal Co., 75 Mo. App 177; Devore v. Railway, 86 Mo. App. 429; Bullmaster v. St. Joseph, 70 Mo. App. 60.

BROADDUS, P. J.—In April, 1902, plaintiff was injured while in the employ of defendant. His injury was caused by a fall from a scaffold which he alleges was insecurely constructed. The facts, generally speaking, are: That the scaffold in question was constructed of what are known as bricklayers' trestles, with planks resting upon the top thereof. These trestles were made of one inch wooden material and consisted of two legs. They were placed five feet apart and upon them the boards were laid for the workmen to stand upon while engaged in there work. Each leg of these trestles was five feet in length, and by reason of the hinges at the top they could be spread to different degrees of width. The defendant was engaged in repairing his building which had been destroyed by fire, and he had a force of bricklayers, carpenters and laborers at work. Daniel Harrington was employed by defendant to superintend the force of men engaged in the work and had the power to hire and discharge workmen. He was not present at all times during the progress of the work, being employed part of the time at some other place. His son was employed by him as a carpenter and was regarded by the other workmen as a "pusher" or "straw boss" and as foreman in the absence of his father.

Daniel Harrington testified that the work was rough work and did not need any foreman to superintend it, and that he would at times tell his son—and at other times, other employees— the work he wished done, in order that they might communicate his wishes to others, and that in measure he looked to the carpenter to whom he gave instructions or directions concerning any particular work, to see that it was properly done. There is evidence to the effect that Daniel Harrington directed that the trestles be used for the construction of the scaffold; and, in the language of a witness, "told William (his son) and then William gave directions down through the rest of us." Plaintiff testified that Daniel Harrington

told him that he would get his instruction from the son, William. Another witness stated that William directed the building of the scaffold. Another, that Daniel Harrington was superintendent of the job, and William the foreman; that he accepted his orders from him, and that, "he ordered the men when to do the work and how to do it." And that, "Daniel Harrington was there about half the time and when he wasn't then he acted under Will Harrington's orders."

The trestles, as used, were spread so that they were about three feet and six inches in height, which created the necessity of bracing them to prevent them from collapsing. William did the bracing with boards fiveeighth of an inch in thickness, tacked on each leg of a trestle with a single sixpenny nail. One of these trestles collapsed, or spread out, which caused the scaffold to fall, which was the cause of the plaintiff's injury. It appeared that only one of the trestles collasped, which was the result of one of the strips at one end getting loose or pulling out. The scaffold fell within a short time after the men had commenced work on it. It was shown that on numerous occasions while the plaintiff was at work a similar scaffold had been used.

The petition alleged several grounds for recovery, but plaintiff was restricted by the trial court to the following, viz.: "That the logs of said trestles were extended so far apart, namely, about five feet, that they were in danger of spreading and allowing said trestles to collapse; that the legs of said trestles by and under the direction of a foreman vice-principal named William Harrington, had been carelessly and negligently secured by tacking a light piece of sealing across, connecting the respective legs at the bottom, and by fastening the same at each end with a single small nail, which said nails were but partially driven in. The verdict and judgment were for the plaintiff in the sum of $3,000, from which defendant appealed.

The defendant contends that the verdict rests upon mere conjecture; that conceding that William Harrington was the vice-principal, yet under the law, the said Harrington was a fellow-servant with plaintiff in respect to work done by him in constructing the platform; and that plaintiff assumed the risk. At the outset, it is safe to say that there is ample evidence to the effect that William Harrington was acting as foreman during the progress of the work and at the time of the erection of the scaffold. We do not agree with defendant that the verdict rest upon mere conjecture—on the contrary, it is supported by the evidence. The evidence tended to show that the brace in question used to prevent the spreading of the trestle was unsafe. The five-eighth of an inch plank secured to the legs of the trestle at each end by a sixpenny nail was not sufficient to prevent one of them from spreading and causing the collapse of the scaffold.

But it is contended that as it was not shown that the thin plank was broken, or the nail bent or broken, therefore it must be conceded that they were sufficient; and that as there was no evidence that the nails were only partially *driven,* there is no basis for the verdict. But as it was shown that the brace at one end had become detached because it had got loose, or the nail pulled out, it is evident that is was the result, if the nail was fully driven—which we presume it was, as there was no evidence that it was not—of the instability of the brace, or the insufficiency of the nail; either of which would entitle plaintiff to recover. The frail character of the brace and the smallness of the nail mentioned evidently did not give stability sufficient to brace the legs of the trestle so as to enable it to resist the strain to which it was subjected. In the light of the facts we are not required to resort to mere conjecture to account for the accident. Had the timber used been of sufficient thickness and the nail of sufficient size, the trestle would have

stood the strain, in the absence of some extraneous cause, of which there is no evidence.

It is argued that the allegation that the partial driving of the nails is the gravaman of plaintiff's cause of action, and as there was no evidence that the nails were partially driven, there was nothing upon which the plaintiff could recover. The language of the complaint is that, the trestles "had been carelessly and negligently secured by tacking a light piece of ceiling across connecting the respective legs at the bottom, and by fastening the same at each end with a single small nail, which said nails were but partially driven in." We confess, upon making the effort, that we are unable by the use of any language at our command to better refute defendant's construction than what is contained in the allegation itself.

The next contention of defendant is that, whereas the foreman was vice-principal, yet, under the law, said foreman was a fellow-servant with plaintiff in respect to the work done by the foreman in constructing the scaffold. In a recent case, the law is stated thus: "If the negligence complained of consists of some act done by one having authority which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them, the common master will not be liable." While "on the other hand, the mere fact that the servant exercising authority sometimes, or generally, labors with others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over others." And, "when the negligent act complained of arises out of, and is the direct result of, the authority conferred upon him by his master over his colaborers, the master will be liable." Fogarty v. Transfer Co., 180 Mo. 490; Depuy v. Railway 110 Mo. App. 110.

The plaintiff was not injured by the act of the foreman while he was engaged as a fellow-servant. He was

injured by reason of the faulty construction of the scaffold in question. It was the duty of the foreman to furnish plaintiff a safe scaffold on which to do his work; and it does not matter whether the foreman or other persons actually did the work of such construction, as the negligent act complained of arose out of and was the direct result of the authority conferred upon him by the master over his colaborers to provide a safe scaffold. The court in the Fogarty case illustrated the difference thus: A railroad section boss while laboring with them (his workmen) should injure one of them. And for instance, here, if while the foreman was actually engaged in erecting the scaffold he should have injured plaintiff it would have been the act of a fellow-servant. The superintendent or the foreman, it makes no difference which, furnished the scaffold, which was in law the act of the master, and if plaintiff was injured by reason of its defects the master is liable for negligence. We think the distinction is clear.

The next question is, did the plaintiff assume the risk? If the danger was so glaring that a man of ordinary prudence under the circumstances would have refused to go upon the scaffold at his master's biding he would not be entitled to recover; otherwise, he would. This has been so often decided by the appellate courts of this State that it is unseless to call attention to more than a few of such decisions. See Blanton v. Dold, 109 Mo. 75; Hamilton v. Mining Co., 108 Mo. 364; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467. It was a question, therefore, for the jury. It does not appear that the danger was so glaring as to prevent a person of ordinary prudence from engaging in the work upon the scaffold. There were several other carpenters, including the foreman, also, engaged at the same time with plaintiff when the platform fell, which tends to show that there was no apprehension of immediate danger. A person of ordinary prudence might well presume that

the place was safe where the foreman was engaged. We do not believe there was any negligence that contributed directly to plaintiff's injury, or that he assumed the risk of danger from the falling of the scaffold.

It was shown that plaintiff as the result of his injuries was confined to his bed for seven weeks and to his home for three months. He sustained a fracture in the hip and it was the opinion of the doctors that the injured leg would always be from one to two inches shorter than the other. He was badly crippled. Under such circumstances the verdict was reasonable.

Affirmed. All concur.