MARGARET L. EDGAR, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Plymouth.    March 14, 15, 1905. — June 21, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligence,* Employer's liability.    *Railroad.*

In an action under the employers' liability act by the administratrix of a brakeman on a freight train of the defendant for the conscious suffering and death of the plaintiff's intestate, it appeared, that when the train arrived at the freight yard at one end of its route it passed under the control of a switching crew employed in the yard and that the conductor of the freight train and the intestate had nothing to do until the switching engine gave a signal by whistles that the work of the switching crew was done, that, while the switching crew still was making up the train and before the signal had been given, the conductor of the train ordered the intestate to go in between two freight cars to couple the air hose, which was a part of the intestate's duty, and assured the intestate that he would "look out for him," and that in obeying this order the intestate was injured by reason of a switching engine backing down upon the train with other cars. There was evidence which warranted a finding that it was a general practice for the conductor to order his men to go in and couple the hose between such cars as had been coupled together although the train had not been fully made up and the switching engine had not ceased its work. *Held,* that the jury might find that the accident was due to the negligence of the conductor in giving the order and failing to notify the intestate of the approach of the switching engine, and might find that the negligent act was within the scope of the duty entrusted to the conductor as a person in charge of a train, as they properly might infer from the evidence that the general practice of ordering the coupling of the air hose before the train was fully made up was known to the managing officials of the defendant and was approved by them.

TORT, by the administratrix of the estate of Hugh R. Edgar, under R. L. c. 106, §§ 71, 72, for the conscious suffering and death of the plaintiff's intestate, a brakeman on a freight train of the defendant, from a switching engine backing down with other cars upon the train on which the intestate was a brakeman while he in obedience to an order of the conductor in charge of the train was between two cars for the purpose of coupling the air hose.    Writ dated January 16, 1904.

At the trial in the Superior Court *White,* J. ruled that, upon all the counts not charging negligence of the conductor of the train crew of which the deceased was a member, the plaintiff was not entitled to recover, and submitted the case to the jury

upon the question of the negligence of the conductor of the train crew.

The jury returned a verdict for the plaintiff in the sum of $4,000, and awarded $750 to be paid to the legal representatives of Hugh R. Edgar, and $3,250 to be paid to Margaret L. Edgar as his widow. The defendant alleged exceptions.

*F. S. Hall,* for the defendant.

*T. H. Buttimer, (W. G. Harrington* with him,) for the plaintiff.

HAMMOND, J. Edgar, the plaintiff's intestate, was " head end brakeman," working upon a freight train which ran from Boston to Fall River and return. When the train reached Fall River he uncoupled the locomotive, and a switching crew employed in the freight yard took charge of the train, distributing the cars upon different tracks. When this work had been completed, this same crew proceeded to make up a freight train, taking cars from different tracks, which, when made into a train, were to be hitched to the locomotive that brought down the train upon which Edgar worked, and were to be hauled to Boston. Edgar was to act as brakeman on this train.

The switching crew consisted of a conductor, engineer, fireman and brakeman, no one of whom went upon the train upon which Edgar worked, their duties being confined solely to distributing and uniting cars in the freight yard. Except as hereinafter stated, the men employed upon the freight train running from Boston to Fall River and return had nothing to do in the freight yard until the switching engine gave a signal by whistles that the work of the switching crew was done and that the train was ready for the locomotive.

Edgar was injured while the switching crew was making up this train, and before the signal was given that the train had been made up. He went in between two freight cars to couple the air hose. It was a part of his duty to couple the hose, but the defendant contends that the duty did not arise until the train had been fully made up.

The evidence tended to show that Edgar went to couple the hose in obedience to an express order from Babbin, the conductor of the freight train, coupled with an assurance from Babbin that he would "look out for him," and that the accident was attributable to the negligence of Babbin in giving the

order and in failing to notify Edgar of the approach of the switching engine. We do not understand the defendant to contest the proposition that the jury properly might find that in this way the accident was attributable to the negligence of Babbin.

The defendant, however, stoutly maintains that if there was such a negligent act on the part of Babbin it did not come within the scope of the duty entrusted to him as a person in charge of a train. It contends that by the terms of his employment his duty ended when his train was delivered at the freight yard; that another person was then provided as superintendent until the return train was completely made up, and that Babbin had nothing whatever to do with the making up of this train, or with the train while it was being made up.

The evidence bearing upon this contention is somewhat conflicting, but upon a careful perusal of it we are satisfied that it warrants a finding that it was the general practice for Babbin to order his men to go in and couple the hose between such cars as had been coupled together although the train had not been fully made up and the switching engine had not ceased its work; in a word, that to save time the operations of the switching crew in coupling the cars, and of the freight crew, of which Edgar was a member, in coupling the hose, went on together, and that such was the usual practice. The jury properly might infer that this general practice was known to the managing officials of the defendant and was approved by them, and consequently that in giving the order and the assurance at the time he did, Babbin was acting within the scope of his duty as superintendent.

We are also of opinion that, having as superintendent given the order coupled with an assurance of protection, the duty of using due care to make good the assurance rested upon him as superintendent, and Edgar had the right to rely upon his performance of that duty. *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532.

*Exceptions overruled.*