ANNIE REGAN, administratrix, *v.* BOSTON AND MAINE RAILROAD.

Middlesex. March 28, 1911. — April 4, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence*, Employer's liability, In railroad yard.

At the trial of an action by an administrator against a railroad corporation, the former employer of his intestate, to recover under R. L. c. 106, § 71, cl. 2, 3, § 72, for the conscious suffering and death of the intestate, there was evidence tending to show that the intestate when injured was a foreman of a section gang of the defendant and was working in a railroad yard, where there were frequent shiftings of cars and passing of locomotives, in repairing a track called "thirteen," adjoining and branching from another track called "fifteen"; that the conductor of a shifting crew of the defendant asked the intestate if he could set two cars in on track "thirteen," that the intestate answered, "Yes, you can, but you can't bother me any more until I have this job done," and that the conductor replied, "All right," and soon after put two cars on track "thirteen"; that half an hour later by the conductor's direction a car was shunted on to track "fifteen" which struck the intestate as he was working on track "thirteen" near where the two tracks joined and where they were from ten to eighteen inches apart. *Held*,

that the case was one for the jury, since, in view of the conversation with the conductor, the plaintiff's intestate might have been found to have been relieved of the duty of watchfulness as to cars coming from the conductor's shifting crew.

Tort by the administratrix of the estate of one Michael Regan to recover for the conscious suffering and death of the plaintiff's intestate, which occurred in the Bleachery freight yard, so called, in Lowell on June 24, 1908, the declaration containing two counts, the first alleging under R. L. c. 106, § 71, cl. 3, as the cause of the conscious suffering and death, negligence of some person in the service of the defendant who was in charge or control of a signal, switch, locomotive engine or train upon the defendant's railroad, and the second count under cl. 2 alleging as the cause the negligence of a person in the service of the defendant, who was entrusted with and exercising superintendence, and whose sole or principal duty was that of a superintendent, or, in the absence of such superintendent, of a person acting as superintendent with the authority and consent of the defendant. Writ dated February 13, 1909.

In the Superior Court the case was tried before *Hardy*, J. Such of the facts as are material to an understanding of the decision are stated in the opinion. At the close of the evidence the defendant asked the presiding judge to rule that there was not sufficient evidence to warrant a verdict for the plaintiff. The ruling was refused. The jury found for the plaintiff in the sum of $1,391.67; and the defendant alleged exceptions.

*F. N. Wier*, for the defendant.

*S. A. Fuller*, for the plaintiff.

Rugg, J. This is an action of tort to recover damages for the conscious suffering and death of a foreman of a section gang in the employ of the defendant. The plaintiff's intestate was working in a railroad yard, where there were frequent shiftings of cars and passing of locomotives, and he was repairing a track called "thirteen," adjoining and branching from which was another called "fifteen." There was evidence tending to show that one Currier, who was the conductor of a shifting crew in this yard, asked the plaintiff's intestate if he could set "two cars in" on track "thirteen," and he was answered, "Yes, you can, but you can't bother me any more until I have this job done."

Currier replied, " All right," and soon after put two cars on that track. About half an hour later by Currier's direction a car was shunted on to track " fifteen" which struck the plaintiff's intestate as he was stooping at his work on track " thirteen," very near its junction with track " fifteen" and where the two tracks were ten to eighteen inches apart.

It is plain that if there had been no talk between Currier and her intestate the plaintiff could not recover. It was . said in *Morris* v. *Boston & Maine Railroad,* 184 Mass. 368, 371, " By the nature of his employment a section hand on a steam railroad must look out for passing trains, and such is the settled law of the Commonwealth." The same rule applies in a freight yard where the danger arises from single cars, locomotives or parts of trains. *Byrnes* v. *New York, New Haven, & Hartford Railroad,* 195 Mass. 437. *Dolphin* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 509. *Lynch* v. *Boston & Albany Railroad,* 159 Mass. 536.

The conversation with Currier was susceptible of the interpretation that he, being in charge of the shifting, agreed with the plaintiff's intestate that no cars after the two specifically mentioned would be sent down upon any track in such a way as to interfere with the work the latter was doing on track " thirteen." If this was found to be the fair import of the language used, then the intestate while so engaged and relying upon this. assurance was relieved of the duty of watchfulness as to cars coming from Currier's engine. *Edgar* v. *New York, New Haven, & Hartford Railroad,* 188 Mass. 420. *Santore* v. *New York Central & Hudson River Railroad,* 203 Mass. 437. *Welch* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 84.

*Exceptions overruled.*