[No. 10454.  Department Two.  May 6, 1913.]

C. G. Penson, *Respondent*, v. Inland Empire Paper
Company, *Appellant*.[1]

Master and Servant—Safe Place—Scaffolds—Duty of Master
—Act of Foreman—Fellow Servants. Where the foreman in com-
plete charge of the painting of a building assumed the duty of con-
structing the scaffolds for the use of the painters, negligence in
doing the work must be imputed to the master and is not that of a
fellow servant.

Same—Liability for Acts of Foreman—Apparent Authority—
Limitations. Where a foreman, empowered to hire and discharge
men and in complete control of the work of painting a building,
assumed the duty of constructing the scaffolds, evidence of limita-
tions upon his authority is inadmissible without proof of knowledge
thereof.

Same—Duty as to Scaffolds—Evidence—Admissibility. In an
action for injuries to a painter through the fall of a scaffold, evi-
dence of a custom among painters to erect their own scaffolds is
inadmissible where it was undisputed that they were erected by the
master's foreman.

Same—Negligence—Evidence—Res Ipsa Loquitur. A *prima facie*
case of negligence is made out, under the rule of *res ipsa loquitur*,
by the breaking of a 2x4 supporting a scaffold for painters, while
used as intended, and which was constructed for their use by the
master's foreman and his assistant.

Damages—Personal Injuries—Excessive Verdict. A verdict for
$30,000 for injuries to an able-bodied painter, 42 years old, earning
$1,200 a year, whereby he was paralyzed from the waist down, and
his earning capacity destroyed, is excessive, and should be reduced
to $22,000.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered January 9, 1912, upon the ver-
dict of a jury rendered in favor of the plaintiff for $30,000,
for personal injuries sustained by a painter in a fall from
a scaffold. Reversed, unless $8,000 is remitted.

[1]Reported in 132 Pac. 39.

*Post, Avery & Higgins* and *Voorhees & Canfield,* for appellant.

*Graves, Kizer & Graves,* for respondent.

ELLIS, J.—This is an action to recover damages for personal injuries resulting to the plaintiff from the falling of a scaffold on which he was standing while painting the inside of the roof of the defendant's building. The building was about 230 feet long. The part of the interior of the building included within the slanting sides of the roof was divided into some eighteen sections by open framework which extended from the top of one side-wall to the top of the other and up to the apex of the roof, and consisted of a beam or girder resting upon the side-walls; from which beam, passing up and supporting the roof, were heavy braces of timber. The staging for painting the roof was constructed by nailing flat to these braces timbers 2x4 inches in dimension, upon which were placed the ends of two 3x6 inch timbers about 18 feet long, extending from one of these frameworks to the next one, and upon these 3x6 inch timbers were laid cross-wise three planks, 2 inches thick and 10 to 12 inches wide and 16 feet long. Upon these planks the painters stood while painting the roof, shifting the planks along the 3x6 inch timbers when necessary. The only part of this staging which was nailed or in any manner fastened was the 2x4 inch timbers nailed to the framework of the building as above described. There were three stagings used at the same time, an upper staging from which to paint the upper part and apex of the roof, and lower stagings on each side from which to paint the lower part of the roof. They were not put up throughout the building at the same time, but were constructed as the work progressed, the men constructing the staging keeping about two sections ahead of the painters, and using the same timbers repeatedly by taking them from a section where the work was completed and shifting them to the section immediately ahead of that where the painters were then at work,

this process being repeated as the work progressed. There were eight or nine painters employed in painting this roof, all under a foreman, who had the power to hire and discharge the men and general direction over their work. This foreman, together with another man selected by him for the work, personally constructed the staging, which took practically their full time. The only work which the painters performed in connection therewith was to assist in passing the 3x6 timbers over the staging where they were at work into the next section to a point where the foreman and his assistant could receive these timbers on the ends of poles, and thus carry them across to the next 2x4 support and place them in position.

The evidence shows that no one except the foreman and his assistant had anything to do with selecting the timbers and nailing in position the 2x4 supports. In the course of painting the building, the plaintiff was twice employed and once discharged by the foreman. When first employed, in the month of June, he worked wholly on the outside of the building. When he was re-employed, on July 7, 1911, the inside priming had already been done. On that day he and the other painters began putting on the second coat at the north end of the building, working back by sections towards the south end, the foreman and his assistant keeping ahead of them in the construction of the staging. On the morning of July 13th, the work had reached the last section at the south end of the building. The plaintiff, standing upon the upper staging, had finished painting the roof near the apex, and let himself down upon one of the lower side scaffolds, the south end of which was supported by a 2x4 timber nailed to the uprights in the south gable of the building. This timber had been nailed there when the priming first began, and had never been removed. There was another man upon this scaffold at the time, the painters usually working in pairs from the same scaffold. The plaintiff had been on this lower scaffold only a short time—he testified about ten minutes—when the fore-

man came upon the scaffold, advanced towards the middle of it, and the 2x4 timber supporting the south end broke. The scaffold fell, precipitating the three men to the floor thirty feet below, inflicting upon the plaintiff the injuries complained of.

Briefly, the negligence charged was that the defendant, having undertaken through its foreman to furnish a staging for the painters as a completed structure, constructed it so carelessly, unskillfully and negligently, and of such faulty, improper and unsuitable material, that it broke and fell, causing the plaintiff's injuries. The answer denied negligence, admitted that the foreman had charge of painting the building, and set out as affirmative defenses that the plaintiff assumed the risk, that he was guilty of contributory negligence, and that if his injury was not due to his own negligence, it was caused by the negligence of a fellow servant. The affirmative matter was traversed by the reply. At appropriate times in the progress of the trial, the defendant interposed a motion for a nonsuit, a motion to take the case from the jury, and a motion for judgment notwithstanding the verdict, all of which were denied. The jury returned a verdict of $30,000 for the plaintiff. Judgment was entered thereon. The defendant appealed.

The appellant assigns some sixty-two grounds of error, but we find it both impracticable and unnecessary to discuss these in detail, since they all, save the claim of an excessive verdict, ultimately go to the one primary and controlling question, was the appellant guilty of any negligence in the premises resulting in the respondent's injury?

It is first contended that there was no duty on the appellant to construct the scaffolds or to keep them safe, and therefore there could be no negligence in that regard. While it is sometimes broadly stated as a general rule that the master's duty is performed when he has furnished suitable materials for scaffolds and competent fellow servants, it is only so because under the facts in a majority of the decided

cases the master assumed no other duty. Even then the workmen must be left to construct the scaffolds themselves according to their own judgment, without superintendence by the master or his representative, in order to entirely relieve the master from responsibility for the manner in which the work is done. Labatt, Master and Servant, § 614; *Metzler v. McKenzie*, 34 Wash. 470, 76 Pac. 114; *Muehlman v. Spokane & Inland Empire R. Co.*, 58 Wash. 327, 108 Pac. 764; *Swanson v. Sound Construction & Eng. Co.*, 67 Wash. 128, 120 Pac. 880; *Ralph v. American Bridge Co.*, 30 Wash. 500, 70 Pac. 1098.

It would be useless to review the many authorities cited from other jurisdictions, since the rule plainly recognized by this court in the foregoing decisions and sustained, as we believe, by both reason and authority, is that the master owes a duty in any case, in the alternative, "to furnish either a suitable platform or scaffold for doing the work that the plaintiff and his coemployes were required to do, or proper and suitable materials for the construction of such a platform." Labatt, Master and Servant, p. 1781, § 615. The arbitrary assumption apparently indulged by some courts to the effect that the construction of a temporary staging is so distinctly a characteristic of service that the responsibility for its proper performance is not assumed by the master even when the work is done by the master, or through the direct intervention of his foreman or representative (see *Noyes v. Wood*, 102 Cal. 389, 36 Pac. 766; *Ross v. Walker*, 139 Pa. St. 42, 21 Atl. 157, 159, 23 Am. St. 160; *Garrow v. Miller*, 72 Vt. 284, 47 Atl. 1087), has never been adopted by this court. While the duty is so far a duty of service that the master may avoid responsibility by frankly leaving the work of construction entirely to the servants themselves after furnishing suitable materials, still if he assumes to construct the scaffold himself, either personally or by one clothed by him with apparent authority to do so, then the master is responsible for a lack of reasonable care in the

work of selecting and using the materials. It is going quite far enough to give the master the absolute choice of alternatives; either to assume the duty of selection and construction himself, or to throw that duty entirely upon the servants themselves. Neither of the decisions of this court above cited goes further. It follows that:

"The essential question to be determined, if we choose the alternative line of investigation, is whether the master, as a matter of fact, assumed to furnish the scaffold or other instrumentality in a completed form, or merely furnished the materials and left them to be used by the servants themselves. Clearly, if such assumption is established, the master will be liable, as for negligence, even if the circumstances were otherwise such that he would have been justified in leaving the servants to prepare the defective instrumentality themselves. The case is for the jury where the evidence is conflicting or reasonably consistent either with the hypothesis that the defective appliance was constructed by the fellow servants of the injured person out of materials furnished by the master, or with the hypothesis that it was constructed under the direction of the defendant or his representative." 2 Labatt, Master and Servant, § 615.

It is usually true, as contended by the appellant, that it is the character of the act performed as pertaining to the master and not the rank or grade of the servant performing it which determines whether it is an act of fellow service, and this case is no exception to that rule. The act of choosing between the alternatives was the determinative act, and that choice belonged only to the master. When the choice was made, as in this case, by one clothed by the master with apparent authority to make it, and he elected to build the scaffolding himself, neither the election nor the work done in pursuance of it was an act of fellow service but pertained to the master. The evidence here is clear and convincing that the appellant's foreman, in actual and apparently complete control of the work, actually assumed the duty of constructing the scaffolds, and did so with the assistance of a man selected by himself for the purpose. If they negli-

gently performed the work, their negligence must be imputed to the appellant. *Blackman v. Thomson-Houston Elec. Co.*, 102 Ga. 64, 29 S. E. 120; *Austin Mfg. Co. v. Johnson*, 89 Fed. 677; *Neves v. Green*, 111 Mo. App. 634, 86 S. W. 508; *Woods v. Lindvall*, 48 Fed. 62; *Bryer v. Foerster*, 9 App. Div. 542, 41 N. Y. Supp. 617; *Blomquist v. Chicago, M. & St. P. R. Co.*, 60 Minn. 426, 62 N. W. 818.

But the appellant contends that the foreman went outside the scope of his authority when he undertook to erect the scaffolds. In support of this theory, evidence was offered that the appellant made arrangements with the local painters' union to secure a foreman and painters to do the work, and that when the foreman so secured came, it was agreed between him and the appellant's general manager that the painters were to construct their own scaffolds. It was admitted that the foreman had charge of painting the building with full power to hire and discharge men. His apparent authority extended to every part of the work. There was no evidence, or offer of evidence, that the respondent had any knowledge of any secret limitations upon his authority with respect to the scaffolding. Without such proof the offered evidence of such limitation was clearly inadmissible. The general rules of the law of agency are controlling. 2 Labatt, Master and Servant, § 537.

"A master cannot screen himself from liability for an injury committed by his servant within the line of his employment, by setting up private instructions or orders given by him, and their violation by the servant. By putting the servant in his place he becomes responsible for all his acts within the line of his employment, even though they are wilful and directly antagonistical to his orders. The simple test is, whether they were acts *within the scope of his employment;* not whether they were done while prosecuting the master's business; *but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.* By *authorized* is not meant authority *expressly* conferred, but whether the act was such as was incident to the performance of the duties

intrusted to him by the master, even though in opposition to his express and positive orders." Wood, Master and Servant (2d ed.), § 307.

See, also, *Chicago & N. W. R. Co. v. Bayfield*, 37 Mich. 204; *Camp v. Hall*, 39 Fla. 535, 22 South. 792; *La Fortune v. Jolly*, 167 Mass. 170, 45 N. E. 83; *Edgar v. New York, N. H. & H. R. Co.*, 188 Mass. 420, 74 N. E. 911; *West Chicago St. R. Co. v. Dwyer*, 162 Ill. 482, 44 N. E. 815; 38 Cyc. 477.

"The trial court was influenced by the fact that the master had furnished a competent engineer, and that the injury was caused by the vice principal who was acting without the scope of his authority. This, we are persuaded, does not affect the question of the master's liability." *Keller v. White River Lum. Co.*, 66 Wash. 153, 119 Pac. 4.

It is also urged that the court erred in refusing to allow the appellant to prove that it was the custom among painters to erect their own scaffolds. This evidence was properly excluded in the light of the uncontradicted evidence that the painters here did not construct the scaffolds. The appellant by its foreman undertook that duty. Had there been any conflict as to how and by whom that work was done, evidence of a general custom would have been admissible as tending to show what evidence was the more probable. *Harris v. Puget Sound Elec. R.*, 52 Wash. 289, 100 Pac. 838. Here there was no evidence to which proof of a custom could be directed. The facts being undisputed, the law and not the custom determines the undertaking and consequent liability. *Vollrath v. Crowe*, 9 Wash. 374, 37 Pac. 474.

It is contended that there was no evidence of negligence. The respondent relied upon the doctrine of *res ipsa loquitur* as establishing the appellant's default. That doctrine is a mere rule of evidence. The rationale of the rule, as applied to proof of negligence, is that the accident, in the light of surrounding circumstances, is of such a character as to raise a *prima facie* inference of negligence, thus casting the bur-

den of exculpatory explanation upon the party charged. A circumstance necessary to its application is that the injured party, from the nature of the case, is not in a position to explain the cause, while the party charged is in a position where he is, or if he has exercised reasonable care should be, able to explain and show himself free from negligence, if in fact he was so. *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838.

"The doctrine does not dispense with the rule that the party who alleges negligence must prove it. It merely determines the mode of proving it, or what shall be *prima facie* evidence of negligence." 2 Labatt, Master and Servant, p. 2303, § 834.

So defined, we think the rule clearly applies to the facts before us. The actual occasion of the accident was not a subject of speculation. The staging was being used as intended. The 2x4 support broke. The breaking itself demonstrated to a certainty that it was inadequate, either by reason of an open or a latent defect. The appellant, as we have seen, through its foreman, undertook to construct the scaffolds itself. The foreman and the man selected by him as an assistant in the work thereby became vice principals as to the other man by reason of their performance of a duty assumed by the master. It was their duty to select these timbers and to use reasonable care to know that they were free from defects and adequate for the purpose. Their knowledge and means of knowledge of the character of the timbers used was superior to that of the respondent, who was under no duty with respect to the scaffold other than to exercise ordinary care in the use of it for the purpose for which it was intended. The timber had not been selected by the respondent, placed by him, nor was his use of the scaffold of such a character as to necessitate any close observation of it. No duty of inspection or critical observation was imposed upon him or could be implied from the nature of his work or his use of the scaffold, as might be inferred in a case

where the actual care and manipulation of a piece of machinery or other appliance is intrusted to a servant. Herein lies the distinction between this case and the two cases relied upon by the appellant. In *Lynch v. Ninemire Packing Co., supra,* the instrumentality which caused the injury was under the control of the injured servant, who was in a position to have done some act which might have caused or contributed to the explosion. From the nature of his work he was in better position to explain the cause of the accident than the master was. In *St. Louis, S. F. & T. R. Co. v. Cason* (Tex. Civ. App.), 129 S. W. 394, while a machinist's helper was at work repairing an engine, something rolled under his foot, causing him to fall into the ash pit. There was no failure of any instrumentality, prepared or furnished for his use, to safely perform its intended function. Under the rule as announced in *LaBee v. Sultan Logging Co.,* 47 Wash. 57, 91 Pac. 560, 20 L. R. A. (N. S.) 405, and again in the same case, 51 Wash. 81, 97 Pac. 1104, and as reaffirmed and applied to facts closely analogous to the facts here in *Cleary v. General Contracting Co.,* 53 Wash. 254, 101 Pac. 888, the admitted breaking of the 2x4 support of the scaffold furnished by the appellant made a *prima facie* case of negligence on the appellant's part. As said in the *Cleary* case, after quoting the *LaBee* case:

"Here the instrumentality, the defects of which are complained of, as in the case quoted, was furnished to respondent by the appellant for a particular purpose, and it broke while being used in a proper manner for the purpose for which it was intended. The respondent showed that the appellant furnished him this instrumentality to be used for a particular purpose, and that he used it for that purpose."

The burden of explanation, or at least of showing reasonable care upon the part of the appellant's foreman in the selection and placing of the timber, was upon the appellant. No such showing was made or offered. The respondent and the painter who was with him on the scaffold at the time

were so injured that they could not inspect the board after the accident. The appellant did not produce it, nor any evidence as to its condition. If the defect which caused it to break was latent and unobservable by the exercise of reasonable care, no evidence was offered to prove it. The *prima facie* case made by the character of the accident itself was not met in any way. The unexplained facts speak negligence.

The foregoing discussion makes it unnecessary to review the many errors assigned upon the instructions. We have examined the instructions with care, and find that they correctly cover what we conceive to be the law as applied to the facts.

Finally, it is contended that the verdict is excessive. We think it is. While the respondent was a healthy, able-bodied man, forty-two years old, with a life expectancy of twenty-six years, and is now a pitiable physical derelict, paralyzed from the waist down, whose bowels and urinary organs will not perform their functions without extraneous aid, whose earning capacity is forever gone, and who has suffered and must continue to suffer unimaginable physical and mental torture, still $30,000 exceeds any verdict which this court has ever permitted to stand unreduced. In *Reeks v. Seattle Elec. Co.*, 54 Wash. 609, 104 Pac. 126, a verdict of $25,000 was sustained in favor of a man 21 years of age, for the loss of one leg and the total disability of the other. In *Olson v. Gill Home Inv. Co.*, 58 Wash. 151, 108 Pac. 140, 27 L. R. A. (N. S.) 884, a verdict in the same amount was sustained in favor of a young boy for the loss of both hands. The life expectancy in each of these cases was much greater than that of the respondent here. The evidence tended to show that the respondent was capable of earning about $1,200 a year. The sum of $20,000 properly invested would probably produce an annual income equal to that amount. While there is no fixed rule by which juries may be governed in cases of this kind, we mention this circumstance as throwing some light upon what might be considered compensatory. Con-

sidering the age, condition and former earning power of the respondent, and what he has and probably will have to expend for medical aid and nursing, we think, taking the cases mentioned as a criterion, the recovery should be reduced to $22,-000.

The cause is remanded with direction to vacate the judgment on return of remittitur, and if respondent, within thirty days thereafter, in writing remit from the verdict the sum of $8,000, that the court enter judgment for $22,000 and costs, against appellant and the surety on the supersedeas bond. Otherwise, a new trial shall be granted.

The respondent may recover his costs in this court.

MOUNT, FULLERTON, MAIN, and MORRIS, JJ., concur.