[Nos. 234-41000-1, 306-41197-1. Division One—Panel 1. September 21, 1970.]

JOHN W. MARSLAND, *Respondent,* v. BULLITT COMPANY et al., *Appellants.*

THOMAS STATON et al., *Respondents,* v. BULLITT COMPANY et al., *Appellants.*

*Detels, Draper & Marinkovich* and *Frank W. Draper,* for appellant Bullitt Company.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn,* for appellant Western Gear Corporation.

*Lee, Carney, Smart & Bever, Fred T. Smart,* and *John F. Biehl,* for respondents Marsland and Staton et al.

*Merrick, Burgess & Hofstedt* and *F. Roland Hofstedt,* for Scaffolds & Equipment, Inc.

SWANSON, J.—John W. Marsland and Thomas Staton, window washers employed by American Building Maintenance Co. (ABM), sued Bullitt Company (Bullitt), Scaffolds & Equipment, Inc. (Scaffolds), and Western Gear Corporation (Western Gear) to recover damages for their injuries sustained when a scaffold and hoist apparatus furnished by Bullitt for their use in washing the Logan Building windows malfunctioned and plunged[1] about seven

---

[1]The power-driven scaffold unit normally descended at 16 feet per minute and was traveling at this rate from the 8th floor to approxi-

floors to the sidewalk below. Western Gear manufactured the equipment claimed to be defective, and Scaffolds supplied it to Bullitt. Western Gear was voluntarily dismissed with prejudice on plaintiffs' motion. Defendants Bullitt and Scaffolds brought cross actions for indemnity against Western Gear. The trial court, sua sponte, severed the cross actions from the initial action, and the matter proceeded to trial. The jury returned a verdict in favor of the plaintiffs against Bullitt only, and in favor of Scaffolds. The trial court denied Bullitt's motion for a new trial and judgment n.o.v., and judgment entered for plaintiffs against Bullitt. Bullitt appeals.

Subsequently, in a separate trial to a different jury, Bullitt's cross action against Western Gear seeking indemnity resulted in a verdict against Western Gear.[2] Western Gear appeals from the judgment entered against it.

Bullitt owns and operates the Logan Building, a 10-story office building located at 5th Avenue and Union Street in Seattle, and employed ABM to perform janitorial services at the building, including window washing. ABM's employees, the respondents Marsland and Staton, at the time of the accident were washing windows from a power-driven scaffold suspended from the roof. The scaffold consisted of a platform and a "Sky Climber"[3] hoist apparatus

mately the 7th floor. As it approached the 7th floor, there was a loud whirring sound, and the platform descended faster and faster, and although the accelerated descent was rapid, it was not quite a free fall, and the impact with the sidewalk was somewhat broken when the platform struck some wires near the ground level.

[2]Scaffolds was a third party defendant as a result of Western Gear's cross complaint against Scaffolds to recover whatever sum Bullitt might recover against it. Scaffolds was dismissed from the case on motion to the court.

[3]The Sky Climber is an electrically powered hoisting apparatus designed and manufactured by Western Gear and differs from the usual power hoist in that the cable is not stored on the drum. The cable, the upper end of which is attached to a boom on the building roof, passes through a guide in the top of the Sky Climber, makes 4½ turns around

which was used to raise and lower the platform. Western Gear designed, manufactured and owned the Sky Climber hoist. Scaffolds is Western Gear's distributor for Sky Climber hoists. Western Gear had supplied the Sky Climber to Bullitt through Scaffolds a few days prior to January 30, 1963. The platform itself was owned by Bullitt. The Sky Climber was assembled and attached to Bullitt's platform by an employee of Scaffolds.

On January 30, 1963, Marsland and Staton began their window washing using the platform and Sky Climber hoist. After descending two or three floors, the Sky Climber apparatus failed to function properly. As a result of the hoist's malfunction, Marsland and Staton were unable to control the descent of the platform, and the platform made its descent at an accelerated speed to the sidewalk below, a distance of approximately seven stories.

Marsland and Staton brought suit against Bullitt as well as Scaffolds and Western Gear for recovery of money damages for injuries sustained by them as the result of the accident. Both men contended they were severely and permanently injured. They contend Bullitt was negligent because it

> failed in its duty to provide them with a safe place to work and on the contrary, it furnished them with a scaffold equipped with a hoist which scaffold, hoist or combination was unsafe, dangerous and defective.

The Sky Climber in question was assembled and fitted with a cable by Scaffolds in accordance with directions published by Western Gear. After assembly, the Sky Climber was attached to Bullitt's platform by Scaffolds in such a manner that the lower end of the Sky Climber cable passed through a lead pipe which had first been attached to the side of the platform, and the lower end of the cable then hung free beneath the platform. The unit thus assembled

---

the drum, passes through a departure guide at the base of the Sky Climber, and then hangs beneath the platform. It is designed so that it climbs up and down the suspended cable much like a "monkey on a string" toy.

and attached to the platform was tested by Scaffolds, and it then appeared to function satisfactorily.

Bullitt admitted that it provided a scaffold and hoist for ABM's employees but denied any negligence on its part and contended that Marsland and Staton contributed to their injuries by their own negligence. Scaffolds likewise denied negligence and alleged that Marsland and Staton were guilty of contributory negligence.

Bullitt makes two encompassing assignments of error: first, that the court erred in not granting a motion for judgment n.o.v., and, second, that the court erred in not granting a motion for new trial. Various particulars are delineated under each of these assignments, but the central issue concerns the court's instruction on Bullitt's standard of care. Error is not assigned to this instruction;[4] rather, Bullitt says instruction 8 "constituted only the most general, vague and ambiguous statement of the law on the issue of appellant's alleged negligence." The argument is that the negligence issue was not adequately presented without Bullitt's requested instruction 21,[5] plus either re-

---

[4]"You are instructed that the Bullitt Company, as the owner and operator of The Logan Building, has a duty to the employees of the American Building Maintenance Company to exercise reasonable care to furnish said employees with reasonably safe equipment and with a reasonably safe place in which to work. This duty is nondelegable; by this it is meant that it is not enough for the owner or person in control of the building to say that he employed careful or competent people to perform this duty for him—he cannot shift the duty to someone else—but remains himself responsible to exercise reasonable care to furnish a safe place to work and safe equipment. The owner or person in control of a building is, however, not an insurer of the safety of the building or appliances. He must exercise that degree of care which a reasonably prudent building owner or person in control would exercise under similar circumstances considering the probable consequences of his failure, if any, to furnish a safe place to work or safe equipment."

[5]"It was the Bullitt Company's duty to exercise reasonable care to maintain its premises and appliances in reasonably safe condition for use by the plaintiffs, or to warn the plaintiffs of dangerous conditions which were actually known to or which were discoverable upon a

quested instruction 1[6] or requested instruction 6.[7]

■ Bullitt claims these instructions which are supported by the evidence are necessary to present its theory of the case to the jury, *viz.*, that plaintiffs' injuries were caused by a latent defect in the hoist. We must determine if Bullitt's case was prejudiced by the failure to give its requested instructions. When the instructions given are adequate to allow a party to argue his theory of the case, it is not error to refuse other instructions. *Cakowski v. Oleson*, 1 Wn. App. 780, 463 P.2d 673 (1970); *Laudermilk v. Carpenter*, 76 W.D.2d 699, 457 P.2d 1004 (1969). This issue must be viewed in relation to the instruction given on the liability of the codefendant Scaffolds.[8]

---

reasonable inspection by the Bullitt Company and which were not known to or discoverable by the plaintiffs in the exercise of reasonable care for their own safety."

[6]"If you find from the evidence that the accident in question was caused by a malfunction of the "sky climber" hoisting apparatus, that fact alone would not render the defendant Bullitt Company negligent. It would be negligent in such case only if the evidence establishes that it knew of such defective condition or that the nature of the defect was such that it should have known of it in the exercise of reasonable care."

[7]"The Bullitt Company is not liable to the plaintiffs for an accident caused by a defective condition of the apparatus, which was not known to the Bullitt Company and which could not have been discovered by it in the exercise of reasonable care."

[8]"Defendant Scaffolds & Equipment, Inc., is a distributor of the Sky Climber and has a duty to inspect the Sky Climber prior to selling it or placing it in a third party's possession for use, and is charged with knowledge of what a reasonable inspection would disclose. Defendant Scaffolds & Equipment, Inc. is not required to disassemble the Sky Climber in making such inspection, but is required to observe the Sky Climber when it is received, observe whether the unit operates properly, install the unit in such a manner that it could be used with safety, and investigate and test the operation of the unit with respect to safety, after installing it for use of third persons. In making such inspection, investigation and test, the defendant Scaffolds & Equipment, Inc. is required to utilize the peculiar opportunity and competence which a distributor of such Sky Climber has or should have.

"A distributor of items such as the Sky Climber Unit, if such unit is in fact in a dangerous condition, is liable for injuries proximately resulting from the use of such Sky Climber for the purpose intended, if the distributor

■ What is the standard of care which Bullitt had to exercise for plaintiffs' benefit? They were employees of an independent contractor, ABM. The employee of an independent contractor stands in the same relation to the contractee as does a business invitee. *Hartman v. Port of Seattle,* 63 Wn.2d 879, 389 P.2d 669 (1964). This means in effect that the plaintiffs here may be regarded as if they were directly hired by Bullitt, because a servant working on his master's premises is also treated as an invitee. W. Prosser, Torts § 80 (3d ed. 1964). Thus, the standard of care which Bullitt had to exercise is an amalgam of the standards exercised for an employee and for an invitee.

An employee must be provided a safe place in which to work, *Myers v. Little Church by the Side of the Road,* 37 Wn.2d 897, 227 P.2d 165 (1951); 57 C.J.S. *Master and Servant* § 603 (1948); W. Prosser, *supra;* and safe tools with which to work, 57 C.J.S. § 604, *supra,* W. Prosser, *supra.* A business invitee must be protected against defects in the premises known to the possessor or which could be discovered by a reasonable inspection. *Ward v. Thompson,* 57 Wn.2d 655, 359 P.2d 143 (1961); W. Prosser § 61, *supra;* Restatement (Second) of Torts § 343 (1945). The invitor is not liable for harm resulting from an unknown condition which could not have been discovered by a reasonable inspection.

The amalgam was presented in *Hartman,* 63 Wn.2d at 882, which involved parties in the same status as plaintiffs and Bullitt here. The court said:

The duty owed to an invitee is to exercise reasonable

"(a) knows, or in the exercise of reasonable care should know, that the unit as installed by the distributor is dangerous for the use for which it is supplied, and

"(b) has no reason to believe that others using the unit for its intended purpose will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform the user of the unit of such dangerous condition.

"*A distributor is not liable for injuries resulting from latent or hidden defects in the unit supplied to him which are in fact unknown to him, and which are not discoverable by reasonable inspection and test.*" (Italics ours.) Instruction 9.

care to maintain the premises in a reasonably safe condition, or to warn the invitee of any danger which is known or discoverable by a reasonable inspection on the part of the occupier and not known or not discoverable by the invitee using reasonable care for his own protection. *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn. (2d) 647, 364 P. (2d) 796 (1961); Restatement, Torts § 343.

The duty to supply a safe place to work and safe tools is limited by what is known or discoverable by a reasonable inspection. There is no liability for an undiscoverable latent defect.

Having defined Bullitt's standard of care, we inquire whether the court's instruction adequately defined the standard. We observe that neither Bullitt nor Scaffolds would be liable for an undiscoverable latent defect. The complaint against both defendants was formed on terms of an unsafe, dangerous, and defective device. The evidence adduced at the trial was that the Sky Climber hoist was defective.

The jury was explicitly instructed that Scaffolds would not be liable for an undiscoverable latent defect.[9] Neither would Bullitt; yet, the jury was not told this. The court's instruction said Bullitt "must exercise that degree of care which a reasonably prudent building owner or person in control would exercise under similar circumstances . . ." Instruction 8.

While it was no doubt possible for Bullitt to argue to the jury that it should not be held liable for some undiscoverable defect, the absence of such an instruction seriously prejudiced Bullitt's defense. On the one hand, the jury was instructed by the court that Scaffolds would not be liable for such a defect. On the other hand, Bullitt had to make the same argument to the jury on the basis of a negative implication. The dignity and prestige of the court were placed in the balance of justice on the side of Bullitt's codefendant, Scaffolds. The argument is forceably stated by Bullitt:

---

[9]See note 8.

The instructions as a whole, in fact, justified the jury in concluding that (1) there was a substantial difference in the liabilities of the two defendants with regard to latent defects, and (2) that it was entitled to find that appellant had failed "to exercise that degree of care which a reasonably prudent building owner would exercise" when it failed to conduct whatever inspection of the "Sky Climber" would have been necessary in order to locate and recognize its latently defective condition.

■ We hold that when there are two defendants in a case, each of whom owes the plaintiff the same duty, it is prejudicial error for the court not to instruct the jury on each defendant's liability in equivalent terms. Because of this error, the case must be remanded for a new trial.

Since we hold that Bullitt is entitled to a new trial, it is unnecessary to enumerate the other arguments presented in support of the same result. We have fully considered these arguments and we do not believe any one of them constitutes an independent ground for the relief we have granted.

In arguing that a judgment n.o.v. was the proper result in this case, Bullitt contends that the evidence was insufficient to support a plaintiffs' verdict under the proper instructions. Bullitt claims the evidence shows that the accident was caused by a latent design defect. Bullitt contends the plaintiffs presented no evidence that Bullitt knew of, or could reasonably have discovered, the defect. This latter point, says Bullitt, is controlled by the verdict in favor of Scaffolds. This argument may be restated: Since the jury was instructed that Scaffolds was not liable for undiscoverable defects in the hoist, the verdict in favor of Scaffolds necessarily found that the defects, if any, could not have been discovered in a reasonable inspection. From this line of reasoning, Bullitt concludes that it could not be liable because the liability of both defendants had to be predicated on the same acts or omissions.

■ This argument, while seemingly persuasive, fails because it ignores one critical term—reasonable. Both defendants are accountable for what is disclosed by a reason-

able inspection, but the scope of a reasonable inspection may differ as to each defendant. A reasonable inspection is one made by a reasonable man, and a reasonable man is bound by the knowledge he possesses about a given subject. W. Prosser, Torts § 32 (3d ed. 1964). Here, Bullitt knew that a prior hoist had malfunctioned on earlier occasions. Bullitt had a degree of knowledge which could make its reasonable inspection differ from Scaffolds'.[10] Therefore, the fact that a jury found Scaffolds could not have discovered the defect does not ipso facto mean that Bullitt could not have discovered the defect by a reasonable inspection.

In answer to the argument that the evidence showed only a latent design defect, we observe that Bullitt's duty to plaintiffs extended beyond the need to make inspections. As stated above, Bullitt had to supply plaintiffs with safe tools and a safe place to work. This duty was recognized in the court's instruction 8, *i.e.*, "that degree of care which a reasonably prudent building owner or person in control would exercise under similar circumstances . . ." To determine the scope of that duty, we look to what was foreseeable by a reasonably prudent businessman in Bullitt's position. *Wells v. Vancouver*, 77 Wn.2d 800, 467 P.2d 292 (1970).

The duty to provide a safe place to work is bounded by the risks foreseeable.

> Where the danger of harm is great, as it is with scaffolds, ladders, and the like, public policy requires that the occupier of the premises take the utmost precaution to keep such equipment in a safe condition.

*Ward v. Thompson*, 57 Wn.2d at 660. By this we do not mean to indicate that the supplier of a scaffold is strictly liable, but, rather that where the hazards are extremely dangerous, the precautions to be taken by the reasonable man increase.

Applying the evidence in this case to the test just stated, we see an independent basis on which Bullitt could be

[10]Bullitt's knowledge of prior malfunctions of the Sky Climber was firsthand. Scaffolds' knowledge was secondary.

found negligent. Although the Sky Climber unit involved in this accident was on its maiden voyage, so to speak, Bullitt, as mentioned above, had prior experience with other Sky Climbers, and this experience was not confidence-inspiring. With this experience for a background, Bullitt may have been negligent in continuing to use Sky Climber hoists. The hazards presented to these window washers made it incumbent on Bullitt to take precautions commensurate to the risks involved. We thus see nothing inconsistent between evidence of a design defect and the verdict for plaintiffs.

■ The final point urged to support a judgment n.o.v. is that the plaintiffs were contributorially negligent as a matter of law. The rule of law pertaining to this issue is so well known as to stand without citation: Contributory negligence will be resolved as a matter of law only when the facts are undisputed and reasonable minds could draw but one inference. The jurors here were instructed on contributory negligence and decided the issue in favor of plaintiffs. We are not prepared to say that this determination was unreasonable or that reasonable minds could not differ. We believe the evidence requires that a jury decide this issue.

The final question remaining before us concerns the result in the indemnity action between Bullitt and Western Gear. Since we have ordered a new trial in the initial suit, the judgment in the indemnity action must be set aside pending the new trial.

Although the damage claims and the indemnity actions were severed by the trial court, some of the factors which justified a separation at that time will not be present on retrial. With Scaffolds now removed from the case, the liability issues are less complicated. Though such a determination can best be made by the trial judge, we observe that consolidation for trial would reduce the total time needed to try the case and aid in the expedient administration of justice. Further, Western Gear would then be able to present its evidence to the same jury, and so eliminate the pitfall of inconsistent verdicts.

The judgments in these two cases are stricken and remanded for a new trial.

JAMES, C. J., and FARRIS, J., concur.

Petition for rehearing denied December 23, 1970.