206 P.3d 1264 (2009)
Tambra CURTIS, Appellant,
v.
Jack LEIN[] and Claire Lein, husband and wife, and the marital community composed thereof; and Willow Creek Farm, Incorporated, a domestic corporation, Respondents.
No. 62168-8-I.
Court of Appeals of Washington, Division 1.
May 11, 2009.
*1265 Jo-Hanna Gladness Read, Law Office of Jo-Hanna Read, Seattle, WA, for Appellant.
Kathleen Mary Thompson, Gardner Bond Trabolsi PLLC, Seattle, WA, for Respondents.
AGID, J.
¶ 1 Tambra Curtis walked onto the Leins' dock and her left leg went through it, causing her injuries. The Leins' postaccident dock destruction deprived Curtis of evidence about the dock's condition. Because Penson v. Inland *1266 Empire Paper Co.[1] holds that reasonably safe wooden structures do not ordinarily give way under normal use, res ipsa loquitur provides an inference that the Leins breached their duty to provide premises free of unreasonably dangerous conditions. But Curtis must also offer evidence from which a reasonable jury could find that the Leins should have discovered the dock's defect. Res ipsa loquitur does not carry that burden for her because everyday experience does not teach that dangerous docks ordinarily exhibit discoverable defects. Although Penson also holds that the defects in an inadequate board are discoverable when the board is put in place soon before it breaks, that kind of inspection was not possible here. Nor is there any evidence that the Leins knew, should have known, or had any reason to suspect there was a defect in the dock. Expanding Penson to include the facts in this case would create the potential for premises liability every time a structure fails regardless of whether a defect was discoverable. We affirm the trial court's summary judgment dismissal.

FACTS
¶ 2 John and Claire Lein bought Willow Creek Farm, Incorporated, in what is now Sammamish, Washington, in 1978.[2] The Leins moved to the property in the early 1980s. They sold Willow Creek Farm around 2001 but continued to live there until November 2004 along with their son, Mike, his wife, Donna, and their children. Claire bred and raised racehorses on the farm.[3] After they bought the farm, the Leins enlarged a pond on the property and installed an overflow drainage system that directed water under the pond's earthen dam. The pond was primarily decorative, but the Leins' grandchildren sometimes swam in it. Because the drainage pipes sometimes clogged, the Leins had a dock built from the bank to a point above the pipes to make unclogging easier.[4] The dock was finished at some point in the late 1980s. The pond and dock were open to all the farm's residents.
¶ 3 The Leins hired Michael Stewart as farm manager in late 2001 and provided him, his girlfriend, Tambra Curtis, and their son with housing on the farm. Curtis did not work on the farm. On Sunday, April 25, 2004, Curtis was taking turns riding a horse with a friend. While waiting for her friend to finish riding, Curtis decided to walk out on the dock for the first time since she had been on the farm. After a couple steps, Curtis's left leg went through the dock.[5] Because her leg protruded through the dock past her knee and up to her hip, Curtis was stuck in the dock until Stewart came over and helped her out. The next day, Donna drove Curtis to the doctor. Curtis missed about three weeks of work. Several months after the accident, Curtis's doctors determined she had suffered a hairline fracture of her tibia.
¶ 4 Claire had Stewart remove the dock after he told her that Curtis's leg had gone through it.[6] Before Curtis's accident, Claire never observed that the dock was in need of repair. She did not inspect the dock after the accident. Stewart walked on the dock more times than he could remember and did not have reason to believe the dock was in poor condition. While helping Curtis out of the dock, Stewart observed that the board Curtis stepped on had cracked and broken, but he does not recall what kind of condition the board or dock was in. He does not remember destroying the dock. Mike Lein *1267 never had any reason to think the dock needed repairs. Donna testified that she was on the dock frequently and never had any reason to believe the dock was unsafe. Curtis remembers Donna describing the dock as "weathered" and believes the Leins were aware the dock was not safe because their grandchildren told her then five year old child so.
¶ 5 Curtis brought a personal injury action against the Leins and Willow Creek Farms, Incorporated, alleging that they knew or should have known about the dangerous condition of the dock and failed to remedy the dangerous condition. The Leins moved for summary judgment, which the trial court granted. The trial court ruled that Curtis failed to present evidence from which a reasonable trier of fact could have found that the Leins knew or should have known about the dock's allegedly dangerous condition. And the trial court ruled that res ipsa loquitur does not apply because causes other than the Leins' negligence could have contributed to the dock's failure.[7] Curtis appealed after the trial court denied her motion for reconsideration.

DISCUSSION
¶ 6 This court reviews summary judgment orders de novo and engages in the same inquiry as the trial court.[8] The reviewing court must construe the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party.[9] A material fact is a fact upon which the outcome of the litigation depends.[10] The burden is on the moving party to show there is no issue of material fact.[11] The nonmoving party must set forth specific facts that demonstrate a genuine issue of material fact and cannot rest on mere allegations.[12] The reviewing court will affirm a summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[13]
¶ 7 In an action for negligence, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause.[14] The threshold determination of whether a duty exists is a question of law.[15] The existence of a duty may be predicated on statutory provisions or on common law principles.[16] Under Washington common law, a land possessor's duty of care is governed by the entrant's common law status as an invitee, licensee, or trespasser.[17] Residential tenants and their guests are invitees.[18] Here, Curtis was either a tenant or a tenant's guest. In either case, she was an invitee. In general, one who possesses land owes an affirmative duty to invitees to use ordinary care to keep the premises in a reasonably safe condition.[19] *1268 But under the Restatement standard followed in Washington, liability for dangerous conditions on the land attaches only when the possessor knows of the condition or should have discovered the condition upon inspection.[20] In other words, possessors must exercise reasonable care to discover dangerous conditions, but "[t]here is no liability for an undiscoverable latent defect."[21]
¶ 8 Curtis alleges that the Leins breached their duty to maintain reasonably safe premises. Deposition testimony shows that the dock was weathered and roughly 15 to 20 years old at the time of the accident, that the Leins had sold the property, and that they knew the new owners planned on leveling the farm to build a school. Curtis did not put on any direct evidence from which a jury could have concluded that the Leins breached their duty. Instead, Curtis relies on the doctrine of res ipsa loquitur for the inference that docks maintained in a reasonably safe condition do not ordinarily give way under normal use. When the doctrine applies, res ipsa loquitur "spares the plaintiff the requirement of proving specific acts of negligence in cases where a plaintiff asserts that he or she suffered injury, the cause of which cannot be fully explained, and the injury is of a type that would not ordinarily result if the defendant were not negligent. In such cases[,] the jury is permitted to infer negligence ... on the basis that the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person."[22]
¶ 9 The question of whether the doctrine applies to a particular case is a question of law.[23] We review questions of law de novo.[24] The doctrine applies when
"(1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff."[[25]]
The Leins argue that Curtis failed to satisfy the "exclusive control" element of res ipsa loquitur. But the evidence shows that the Leins had the dock built on their property so that they could clear the drainpipes in their pond. And the evidence shows that the Leins ordered their employee to take the dock down as soon as they found out about the accident, which he did. Once the dock was removed, any evidence Curtis could have used to prove her case was also destroyed. These facts satisfy the exclusive control element of res ipsa loquitur.[26]
*1269 ¶ 10 The Leins claim that improper construction or defective wood could cause docks to give way in the absence of negligence, meaning that res ipsa loquitur would not apply in this case.[27] This argument is unpersuasive for three reasons. First, res ipsa loquitur still applies when the plaintiff cannot eliminate with certainty all other possible causes.[28] Second, the alternative explanations offered by the Leins do not necessarily suggest the absence of negligence. Because the Leins had a duty to use ordinary care to maintain the premises in a reasonably safe condition, keeping a dangerous dock on the premises breaches that duty whether the danger was caused by rot, defective wood, or improper construction.[29] Finally, there is a Washington case holding that res ipsa loquitur applies to explain why a wooden structure would give way. In Penson,[30] a two-by-four supporting a scaffold broke, injuring the worker who had been standing on the scaffold.[31] The worker relied on res ipsa loquitur for a prima facie inference of negligence, and the Washington Supreme Court held that the doctrine applied because the breaking of the two-by-four by itself demonstrated that it was inadequate.[32] Accordingly, we agree with Curtis's contention that wooden structures do not ordinarily give way under normal use on premises that have been maintained to provide for reasonably safe conditions.
¶ 11 Because "there is no liability for an undiscoverable latent defect,"[33] Curtis also has the burden of showing that the dock's defect was discoverable.[34] Deposition testimony shows that the Leins did not actually know that the dock was defective and that Stewart, their employee, regularly walked on the dock and did not notice any problems. Curtis did not notice anything obviously wrong with the dock before she walked out on it and does not remember anything about the dock's condition, other than the fact that her leg went through it. Stewart testified that Curtis's foot broke through a board, but he does not remember anything else about the condition of the dock. From this evidence, a reasonable jury would not be able to conclude that the dock's dangers were obvious or known. Although none of the evidence rules out the possibility of a nonobvious defect that could have been discovered upon a closer inspection, Curtis must prove at trial that a reasonable inspection would have revealed something wrong with the dock. Because she fails to offer evidence from which a reasonable jury could find without speculating that the defect was discoverable, *1270 she cannot make out a prima facie case for premises liability.
¶ 12 Res ipsa loquitur provides the commonsense inference that reasonably safe docks do not ordinarily give way, but it does not follow that dangerous docks ordinarily exhibit discoverable defects. Instead, general experience teaches that the discoverability of a wooden structure's flaw depends on the type of structure and the type of defect. For example, if rotting wood ordinarily signals impending failure, other defects  such as improper construction or defective wood  are not necessarily obvious or discoverable. Here, the testimony, limited as it is, suggests that the board cracked underfoot. That is the type of defect which can occur suddenly and without any opportunity for discovery. Curtis asks the court to extend res ipsa loquitur beyond the realm of everyday experience: applying the doctrine here would require the jury to speculate about the structural properties of wood and the location of the defect.[35]
¶ 13 Although Penson held that the fact of a scaffold's collapse provides an inference that two-by-four supporting the scaffold was discoverably inadequate,[36] it does not control the question of whether the condition of this dock was discoverable. First, the facts of Penson show that the employer's agent was building one section of scaffolding, taking that section down, and then building a new section with the same lumber.[37] Accordingly, the employer's agent had the opportunity to examine both sides of each board shortly before use. Here, the boards were incorporated into a dock that was built 15 to 20 years before Curtis stepped through it, so any opportunity to inspect the structural integrity of both sides of the dock's boards had long since passed. Although a jury is normally charged with deciding whether a land possessor should have discovered a dangerous condition,[38] no reasonable jury could find that possessors are required to take a dock apart to closely inspect both sides of the dock's boards when a person who had walked on that dock more times than he could remember did not notice anything wrong with it. Thus, res ipsa loquitur does not supply an inference that the dock's dangerous condition was discoverable.
¶ 14 Additionally, Penson involved workplace injuries, not premises liability. While the duty owed to employees when Penson was decided is the same as the duty owed to invitees now,[39] its applicability is limited by the context in which it was decided.[40] The court decided the case during the height of dissatisfaction with the ability of fault-based adjudication to provide a fair remedy for workplace injuries.[41] We note that in the nearly 100 years since Penson was decided, neither the courts nor the legislature has done away with fault-dependent recovery for premises liability, and we decline to extend Penson's generous application *1271 of res ipsa loquitur. Expanding the doctrine to cover these facts would create the potential for liability every time a structure collapses regardless of whether the defect was discoverable. Unless the possessor is able to offer convincing exculpatory evidence, as the employer failed to do in Penson,[42] liability would flow automatically from the inference of negligence provided by res ipsa loquitur.[43]Penson's outcome reflects the efforts of its era to mitigate the harsh results of preworker's compensation workplace injury litigation.[44] But premises liability has not developed along a similar track, and the case law makes it clear that landowners do not have an absolute duty to insure the safety of all invitees.[45]
¶ 15 We affirm.
WE CONCUR: DWYER, A.C.J., and ELLINGTON, J.
NOTES
[] The caption in the summons and complaint filed in superior court refers to respondent as "Jack" Lein. Thus, that name is used in the case caption above. Respondent's legal name, John Lein, is used elsewhere in this opinion.
[1] 73 Wash. 338, 132 P. 39 (1913).
[2] The Leins incorporated the farm in the mid-1980s. Willow Creek Farm, Incorporated, is also a defendant to this action.
[3] We refer to the Leins by their first names to avoid confusion.
[4] Claire and Michael Stewart, a previous farm manager, thought that Mike Lein had built the dock, but Mike remembered that a previous farm manager had built it. Mike Lein thought that the wood used to build the dock had been treated with creosote because most of the wood on the farm was.
[5] When asked to explain whether the board felt weak before she fell through it, Curtis replied: "Walked onto the dock, went down."
[6] By the time Curtis fell through the dock, the Leins had sold the farm. Knowing that the new owners planned to level the property to build a school, Claire said she saw no reason to replace the dock.
[7] ("Because there are other causes that could have resulted in the failure of the dock step other than the negligence of the landlord, that is failure to inspect or maintain, under these facts, the Court concludes that the doctrine of res ipsa loquitur does not apply.")
[8] Sheikh v. Choe, 156 Wash.2d 441, 447, 128 P.3d 574 (2006).
[9] Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999).
[10] Balise v. Underwood, 62 Wash.2d 195, 381 P.2d 966 (1963).
[11] Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
[12] CR 56(e): Baldwin v. Sisters of Providence in Wash., Inc., 112 Wash.2d 127, 132, 769 P.2d 298 (1989).
[13] CR 56(c); Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000).
[14] Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994).
[15] Id. at 128, 875 P.2d 621.
[16] Bernethy v. Walt Failor's Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982).
[17] Tincani, 124 Wash.2d at 128, 875 P.2d 621.
[18] Sjogren v. Props. of Pac. Nw., LLC, 118 Wash. App. 144, 148, 75 P.3d 592 (2003).
[19] Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 49, 914 P.2d 728 (1996).

Applying this rule to landlords and common areas means that landlords have an affirmative obligation to maintain the common areas of the premises in a reasonably safe condition. Geise v. Lee, 84 Wash.2d 866, 871, 529 P.2d 1054 (1975). Both parties agree that the pond was a common area. Under the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, landlords must keep common areas reasonably clean, sanitary and safe from defects increasing the hazards of fire or accident. RCW 59.18.060(3).
[20] Tincani, 124 Wash.2d at 138, 875 P.2d 621. Restatement (Second) of Torts § 343 (1965) provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
[21] Marsland v. Bullitt Co., 3 Wash.App. 286, 293, 474 P.2d 589 (1970). See also Ingersoll v. DeBartolo, Inc., 123 Wash.2d 649, 652, 869 P.2d 1014 (1994) ("actual or constructive notice of the unsafe condition" is a prerequisite for possessor liability).
[22] Pacheco v. Ames, 149 Wash.2d 431, 436, 69 P.3d 324 (2003) (citations omitted).
[23] Id.
[24] Griffin v. W. RS, Inc., 143 Wash.2d 81, 87, 18 P.3d 558 (2001).
[25] Pacheco, 149 Wash.2d at 436, 69 P.3d 324 (citation omitted) (internal quotation marks omitted) (quoting Zukowsky v. Brown, 79 Wash.2d 586, 593, 488 P.2d 269 (1971)). The Leins concede that the dock's failure was not due to any voluntary action on the part of Curtis.
[26] See Morner v. Union Pac. R.R. Co., 31 Wash.2d 282, 291, 196 P.2d 744 (1948) ("The doctrine of res ipsa loquitur is based in part upon the theory that the defendant, having the sole and exclusive charge of the agency or instrumentality which caused the injury, knows the cause of the accident, or injurious occurrence, or has the best opportunity of ascertaining it, and should, therefore, be required to produce the evidence in explanation thereof, while, on the other hand, the plaintiff has no such knowledge and is, therefore, compelled to allege negligence in general terms and to rely upon proof of the happening of such occurrence to establish negligence.").
[27] See Zukowsky v. Brown, 79 Wash.2d 586, 595, 488 P.2d 269 (1971) (the absence of negligence element is satisfied when "`the general experience and observation of mankind teaches that the result would not be expected without negligence'") (quoting Horner v. N. Pac. Beneficial Ass'n Hosps., Inc., 62 Wash.2d 351, 360, 382 P.2d 518 (1963)).
[28] Douglas v. Bussabarger, 73 Wash.2d 476, 486, 438 P.2d 829 (1968). See also Pacheco, 149 Wash.2d at 440-41, 69 P.3d 324 (res ipsa loquitur instruction should be given even when the defendant offers some evidence of how the injury would have occurred without negligence).
[29] As discussed later, the possible causes of failure are relevant to the question of whether the Leins should have discovered the defect.
[30] The Leins do not address or attempt to distinguish Penson.
[31] Penson, 73 Wash., at 339-41, 132 P. 39. At the time Penson was decided, employers had a duty to provide employees with reasonably safe working conditions, but "`the master [was] not liable for an injury to his servant from the giving way of such a structure ... unless the master knew, or by the exercise of reasonable inspection might have known, of the defect therein.'" Wilson v. Cain Lumber Co., 64 Wash. 533, 537, 117 P. 246 (1911) (quoting 4 Thompson, Laws of Negligence §§ 3952, 4396).
[32] Penson, 73 Wash. at 345-48, 132 P. 39 ("The unexplained facts speak negligence.").
[33] Marsland, 3 Wash.App. at 293, 474 P.2d 589.
[34] See Ingersoll, 123 Wash.2d at 652, 869 P.2d 1014. The trial court articulated Curtis's burden during the motion hearing: "So what you would have to show is that a reasonable inspection would have disclosed a dangerous condition." And "you would have to show that had they inspected the dock, they would have discovered a condition like rotten wood and therefore they were negligent in failing to discover rotten wood."
[35] See Cain Lumber, 64 Wash. at 542, 117 P. 246 ("Neither the witnesses nor the jury are permitted to guess as to whether the defect was hidden or not, or to presume negligence from the happening of the accident.").
[36] At the time Penson was decided, workers, like injured invitees now, had the burden of showing that the dangerous condition would have been discovered through reasonable care. See Cain Lumber, 64 Wash. at 537, 117 P. 246.
[37] 73 Wash. at 339-40, 132 P. 39.
[38] See O'Donnell v. Zupan Enters., Inc., 107 Wash.App. 854, 860, 28 P.3d 799 (2001), review denied, 145 Wash.2d 1027, 42 P.3d 974 (2002). See also Cain Lumber, 64 Wash. at 537, 117 P. 246 (want of care imputed when jury finds that latent defect would have been discovered through ordinary diligence); Fredrickson v. Bertolino's Tacoma, Inc., 131 Wash.App. 183, 189, 127 P.3d 5 (2005) (jury must decide whether a "defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care"), review denied, 157 Wash.2d 1026, 142 P.3d 608 (2006).
[39] See Cain Lumber, 64 Wash. at 537, 117 P. 246.
[40] Penson has not been cited since 1964.
[41] See State v. Clausen, 65 Wash. 156, 210, 117 P. 1101 (1911) ("For the greater number of injuries the common law affords no remedy at all. For this unscientific system, it is proposed to substitute a system which will make an award in all cases of injury, regardless of the cause or manner of its infliction; limited in amount, it is true, but commensurate in some degree to the disability suffered. The desirability of this substitution is unquestioned, and we believe that the Legislature had the power to make it without violating any principle of the fundamental law.").
[42] 73 Wash. at 348, 132 P. 39 (upholding jury verdict in favor of employee based solely on inference of negligence provided by res ipsa loquitur where the employer failed to meet prima facie case).
[43] Zukowsky, 79 Wash.2d at 602, 488 P.2d 269 (When res ipsa loquitur applies, "[t]he jury may, but is not compelled to, accept the inference of negligence that arises from the circumstances. Defendant runs the risk of losing on this issue if he fails to produce evidence showing that he was not negligent, but he is under no legal burden to do so.").
[44] See Clausen, 65 Wash. at 210, 117 P. 1101 (upholding Washington's workmen's compensation act of 1911).
[45] See Degel, 129 Wash.2d at 54, 914 P.2d 728.