IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KATHLEEN FEY, | ) | No. 32748-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORPORATION OF GONZAGA | ) | UNPUBLISHED OPINION |
| UNIVERSITY, a corporation, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| STEVEN & TAMARA MCCOLLUM, | ) | |
| a married couple, | ) | |
| | ) | |
| Defendants. | ) | |

LAWRENCE-BERREY, J. — Kathleen Fey appeals the summary judgment dismissal of her premises liability action against Gonzaga University. She argues that material facts preclude summary judgment and that the trial court improperly prohibited her from raising a new theory of negligence at summary judgment. We disagree and affirm.

FACTS

On August 28, 2010, Ms. Fey attended the wedding of her granddaughter at the Bozarth Conference and Retreat Center in Spokane, Washington. The Bozarth

Conference and Retreat Center is owned by Gonzaga University. The ceremony and reception was held in the Bozarth Mansion.

Ms. Fey arrived at about 3:00 p.m. to help her granddaughter dress for the ceremony. She ascended the grand staircase in the mansion to get to the bride's room. The grand staircase consists of two flights of stairs that are separated by two landings. The two landings are separated from each other by a single stair. The staircase is lit primarily by a large east-facing window that provides natural light. Ms. Fey descended the same staircase with the bridal party and remained outside until the ceremony.

After the ceremony, between 5:30 p.m. and 6:00 p.m., Ms. Fey ascended the staircase to retrieve her purse from a room upstairs. The staircase was lit by the natural light from the window, but it was dimmer than before due to the sun's movement to the west. As Ms. Fey descended the staircase, she turned right at the landing to continue down the second stairway. Ms. Fey, who did not notice the single stair between the landings, lost her footing and fell on the landing.

As a result of her fall, Ms. Fey broke her ankle in three places. She required hospitalization and surgery. She also required a follow-up surgical procedure and physical therapy to aid in her recovery. She continues to suffer from the injury.

On July 10, 2013, Ms. Fey filed a complaint against Gonzaga University and her son-in-law and daughter, Steven and Tamara McCollum.[1] Ms. Fey claimed that Gonzaga had a duty to have a well-lit stairwell for those on the premises of the mansion. Ms. Fey explained, "By relying on natural light at an evening event, rather than artificial lighting, it is reasonable to believe that an individual could misstep and endure an accident causing substantial injury, as happened to Ms. Fey." Clerk's Papers (CP) at 6. Ms. Fey also stressed the lack of lighting in the breach and causation sections of her complaint. She alleged:

> 22. Gonzaga University breached its duty of care owed to Ms. Fey by not maintaining adequate lighting at all times during an event that would stretch into the evening hours. By breaching this duty and creating an atmosphere that allowed for darkened stairwells and areas of the premises, Gonzaga University allowed the opportunity for injury to be heightened and realized.
> 23. Ms. Fey's substantial ankle injury and consequent surgeries were directly and proximately caused by the lack of adequate lighting in the stairwell on which she fell on August 28, 2010, at Bozarth Mansion.

CP at 6.

Ms. Fey gave deposition testimony on January 24, 2014. Gonzaga asked about lighting and visibility. Ms. Fey testified that when she used the stairs to get her purse, she did not notice a problem with visibility or lighting other than it was not as bright and

---

[1] The McCollums leased the premises from Gonzaga University. Ms. Fey's cause of action against the McCollums was based upon their duty as lessors to provide a safe premises for their invitees. Ms. Fey subsequently dismissed the McCollums.

sunny as earlier. When asked if she had difficulty seeing where she was going, Ms. Fey answered "[n]o." CP at 30. When asked what she thought caused the accident, Ms. Fey replied, "I have no idea. I didn't see the step. I don't know." CP at 33.

Counsel also asked Ms. Fey if she remembered using anything like a banister or stair rail. Ms. Fey stated, "I know that coming down the main stairway I was holding onto the banister. As I recall, when you get to the bottom there's no banister as you turn the corner." CP at 183. Counsel clarified, "On the landing?" and Ms. Fey answered, "Yes." CP at 183.

In March 2014, Gonzaga moved for summary judgment. Gonzaga contended that Ms. Fey could not provide admissible evidence showing that (1) a dangerous condition existed at the mansion, (2) Gonzaga had notice of the allegedly dangerous condition, and (3) Gonzaga failed to exercise reasonable care in either warning Ms. Fey of the condition or repairing it.

In response, Ms. Fey filed an affidavit and memorandum. In her affidavit, Ms. Fey stated that after she gathered her purse, she came down the stairs with the handrail on her right. She noted that the staircase area was still lit with natural light, but was not as bright as three hours before. When she reached the landing and turned right, she felt her foot was not completely on a flat surface. She stated that she reached for something to grab to keep from falling but there was nothing; the handrail ended at the end of the

4

staircase. The stair that she did not see was on the landing at the bottom of the staircase and simply was not visible until it was too late. She maintained, "The flooring on the landing is all the same with nothing to distinguish or warn anyone that there is a step next to the landing!" CP at 55.

In her memorandum, Ms. Fey responded to Gonzaga's claim that she did not identify a dangerous condition that was an unreasonable risk and caused the fall. Referring to her affidavit, Ms. Fey alleged that the lack of a handrail and the inadequate lighting caused the dangerous condition and stopped her from appreciating the risk of descending the stairs. Her memorandum stated, "[Ms. Fey] saw nothing unusual on the premises, but the fading natural light, the deceptive shadows, the lack of adequate artificial light, and the absence of a handrail created a dangerous condition, which she was unlikely to recognize on her own." CP at 64. Ms. Fey argued that a question of fact existed as to whether she should have known that going down the stairs would be significantly more dangerous than going up or that she would have noted the lack of a handrail at the turn in the landing.

Gonzaga replied, arguing that Ms. Fey's affidavit contradicted her deposition testimony and could not be used to create a material issue of fact. Gonzaga noted that Ms. Fey stated in her deposition that she had no difficulty seeing where she was going and did not know the cause of her fall. However, in her affidavit, Ms. Fey claimed that

5

the step on the landing was not visible until it was too late, implying that visibility was at issue and caused the fall. Gonzaga also argued that Ms. Fey introduced a new legal theory in her affidavit when she alleged that the lack of a handrail along with the inadequate lighting caused the dangerous condition. The lack of a handrail was not mentioned in Ms. Fey's complaint.

The trial court granted Gonzaga's summary judgment motion. The court agreed with Gonzaga that Ms. Fey failed to establish the existence of a dangerous condition or that Gonzaga knew or should have known about the dangerous condition. The court found that there were no material issues of fact in dispute.

The trial court also agreed with Gonzaga that Ms. Fey attempted to introduce in her affidavit a new theory of negligence based on an inadequate handrail and lighting. The court did not allow the new theory to be pleaded in response to the dispositive summary judgment motion.

Ms. Fey filed a motion for reconsideration, alleging that her affidavit and deposition testimony about the poor lighting conditions created a material issue of fact as to whether the staircase created an unreasonable risk of harm to invitees. She also argued that the absence of a handrail was not a new claim or theory of recovery but rather a piece of evidence to support her theory that the unlit staircase was an unsafe, negligent condition. The trial court denied Ms. Fey's motion for reconsideration.

No. 32748-5-III
*Fey v. Gonzaga Univ.*

Ms. Fey appeals.

ANALYSIS

Summary judgment orders are reviewed de novo on appeal. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriately granted if the evidence presented shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). One who moves for summary judgment has the initial burden of showing the absence of an issue of material fact, irrespective of which party, at the time of trial, will have the burden of proof on the issue concerned. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Any doubt as to the existence of a genuine issue of material fact will be resolved against the movant. *Id.* at 226. A material fact is one on which the outcome of the case depends, in whole or in part. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

"A party may move for summary judgment by setting out its own version of the facts or by alleging that the nonmoving party failed to present sufficient evidence to support its case." *Pacific Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a

7

genuine issue of material fact." *Id.* at 351. "If the nonmoving party cannot meet that burden, summary judgment is appropriate." *Id.*

In an action for negligence, a plaintiff must prove four basic elements: (1) the defendant owed a duty, (2) the duty was breached, (3) the plaintiff was injured, and (4) the injury was proximately caused by the defendant's breach. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994).

In Washington, the possessor of land has a duty of care to persons on their property based on the entrant's common law status as an invitee, licensee, or trespasser. *Curtis v. Lein*, 150 Wn. App. 96, 103, 206 P.3d 1264 (2009), *rev'd*, 168 Wn.2d 844, 239 P.3d 1078 (2010). A person is an invitee if they are a business visitor invited on the property to conduct business with the possessor of the land. *Younce v. Ferguson*, 106 Wn.2d 658, 667, 724 P.2d 991 (1986) (quoting RESTATEMENT (SECOND) OF TORTS § 332 (1965)). A customer is entitled to expect that the business owner will exercise reasonable care to make the premises safe for his or her entry. *Tincani*, 124 Wn.2d at 138-39 (quoting RESTATEMENT § 343 cmt. b). "Reasonable care" imposes on the landowner the duty "to inspect for dangerous conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" *Id.* at 139 (quoting RESTATEMENT § 343 cmt. b).

A possessor of land is subject to liability for physical harm caused to his invitees by a dangerous condition on the land if the possessor "'(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.'" *Iwai v. State*, 129 Wn.2d 84, 93-94, 915 P.2d 1089 (1996) (quoting RESTATEMENT § 343).

"It is well established in the decisional law of this state that something more than a slip and a fall is required to establish either the existence of a dangerous condition, or the knowledge that a dangerous condition exists on the part of the owner or the person in control of the floor." *Brant v. Market Basket Stores, Inc.*, 72 Wn.2d 446, 448, 433 P.2d 863 (1967). Dangerousness cannot be inferred from the fall alone. *Merrick v. Sears, Roebuck & Co.*, 67 Wn.2d 426, 429, 407 P.2d 960 (1965).

Both parties assume for the purpose of summary judgment that Ms. Fey was an invitee. Gonzaga moved for summary judgment contending that Ms. Fey did not (1) identify any dangerous condition on the property, (2) establish that the dangerous condition caused her fall and (3) establish that Gonzaga should have realized that a dangerous condition posed an unreasonable risk of harm. The burden shifted to Ms. Fey

9

to present admissible evidence to establish that a genuine issue of material fact remains as to these three matters.

*Absence of alleged dangerous condition—inadequate lighting.* Ms. Fey alleged in her complaint that the dangerous condition was the inadequate lighting on the staircase. However, we find no evidence in Ms. Fey's testimony that the lighting in the staircase was a dangerous condition. She did not state that she had a visibility problem due to low lighting. In her deposition, Ms. Fey was asked about the lighting:

> Q. When you went up the steps to get your purse, was there any problem with visibility or lighting that you noticed going up to get your purse?
> A. It wasn't as bright and sunny, but no.
> Q. Coming down the steps and just before you fell, was there any problem with the light or visibility that caused you to trip?
> A. The only difference is that it wasn't as bright and sunny as it was earlier.
> Q. But did you have any difficulty seeing where you were going?
> A. No.

CP at 30. When asked what she believed caused the accident, she answered, "I have no idea. I didn't see the step. I don't know." CP at 33.

Similarly, in her affidavit, Ms. Fey does not blame inadequate lighting for her injury. She stated that the staircase area was still lit with natural light, albeit not as bright as three hours before:

I came down the stairs with the hand rail on my right side. The time was now between 5:30-6:00. The stair case was still lit with natural light, but not as bright as it had been three hours before. The sun was now on the west side of the building and the big window in the stairwell area is facing east. . . . When I reached the landing I turned to my right to go [to] the second stair case. It was then that I felt my foot not completely on a flat surface. As I reached for something to grab hold of to keep from falling, but there was nothing. The hand rail had ended at the end of the staircase. The step that I did not see was on the landing at the bottom of the main staircase. I fell forward onto the lower landing feeling my ankle break three times.

I did not fall on the staircase, but on the landing. The flooring on the landing is all the same with nothing to distinguish or to warn anyone that there is a step on the next landing!

I wasn't wearing heels. I didn't trip over anything. There was no garbage or anything on the staircase. I wasn't inebriated as I do not drink. The step on that landing was simply not visible until it was too late.

CP at 211-12.

Ms. Fey contends that her testimony does provide the needed evidence. For instance, she argues that her affidavit asserts that there was no artificial lighting and that the low natural light did not provide sufficient lighting. However, as the above quote reveals, she never states that the lighting was insufficient. She states that natural light was present, but just not as bright as before. Nor does she mention the absence of artificial light. We cannot reasonably infer a dangerous condition from the facts as presented in her affidavit. We also cannot infer causation from the facts. Ms. Fey stated that she fell because she did not see the step. While true, something more than a fall is

11

required to establish existence of a dangerous condition. There is no evidence that a dangerous condition caused her not to see the step.

*New theory of negligence—lack of handrail.* Ms. Fey contends that the trial court erred when it concluded that her reference to the absence of a handrail was a new theory that could not be alleged for the first time in response to summary judgment.

A pleading that sets forth a claim for relief shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. CR 8(a).

A complaint, even under Washington's liberal rules of pleading, is required to contain direct allegations sufficient to give notice to the court and the opponent of the nature of the plaintiff's claim. *Berge v. Gorton*, 88 Wn.2d 756, 762, 567 P.2d 187 (1977). "A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 26, 974 P.2d 847 (1999).

Here, the theory pleaded by Ms. Fey in her complaint was negligence based on inadequate lighting. However, after Gonzaga filed its summary judgment motion, Ms. Fey filed an affidavit claiming that the lack of a handrail at the landing created a dangerous condition.

12

Ms. Fey contends on appeal that her complaint alleged a general unsafe condition. This is incorrect. Ms. Fey's complaint is specific. She alleged that the mansion's inadequate lighting caused her injuries. She did not attempt to amend the complaint to add the lack of handrail as a dangerous condition or claim that this caused her injuries. The trial court was therefore correct in dismissing her original theory of liability.[2]

Still more, Ms. Fey fails to establish that the lack of a handrail was a dangerous condition that Gonzaga failed to correct. Ms. Fey asserts that handrails are safety measures to stop falls down stairs. While this may be true, Ms. Fey's testimony established that there was a handrail that ended at the end of the staircase. According to her testimony, it was the landing, not the staircase that did not have a handrail. Ms. Fey does not explain how the lack of a handrail on the landing involves an unreasonable risk of harm to invitees that Gonzaga should have realized. Nor does she cite any building code requirement for her argument. The handrail testimony, therefore, does not create a genuine issue of fact to defeat summary judgment.

*Trial court's denial of Ms. Fey's reconsideration motion.* "We review a trial court's denial of a motion for reconsideration for abuse of discretion." *Kleyer v.*

---

[2] Our holding today does not stand for the proposition that a trial court cannot or should not allow a plaintiff to amend her theory of negligence during summary judgment proceedings. For instance, had Ms. Fey even informally apprised Gonzaga of her new theory of negligence following her deposition and even delayed formally amending as late as these summary judgment proceedings, this case would present different issues.

13

No. 32748-5-III
*Fey v. Gonzaga Univ.*

*Harborview Med. Ctr.*, 76 Wn. App. 542, 545, 887 P.2d 468 (1995). A trial court abuses its discretion only if its decision is manifestly unreasonable or rests upon untenable grounds or reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "An abuse of discretion exists only if no reasonable person would have taken the view adopted by the trial court." *Holaday v. Merceri*, 49 Wn. App. 321, 324, 742 P.2d 127 (1987).

Ms. Fey presented the same arguments on reconsideration as she did on summary judgment. In addition, Ms. Fey alleged that the trial court failed to consider the evidence in the light most favorable to her. However, the trial court correctly dismissed Ms. Fey's claim on summary judgment. Thus, we find no abuse of discretion in the trial court's decision to deny Ms. Fey's motion for reconsideration.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Siddoway, C.J.                       Korsmo, J.

14